Argued February 17, affirmed May 31, 1922.

## SARGENT v. FOLAND.

(207 Pac. 349.)

**Trial—Irrelevant Part of Answer Should be Stricken and Jury Instructed to Disregard it.**

1. Where any portion of answer is not responsive nor relevant to any issue raised on pleadings, a motion should be made to strike the irrelevant part thereof, and the court requested to instruct the jury to disregard it.

**Appeal and Error—Irrelevant Part of Answer Held Harmless Error.**

2. Where a witness, in response to a question asked as to the number of cows on a farm, after answering, detailed the purchase of other cows and feed, *held* harmless error notwithstanding the irrelevancy of that part of the answer.

**Witnesses—Declaration of Deceased Agent Held Inadmissible, Although Evidence is Offered by Adverse Party.**

3. Section 732, Or. L., providing that, when a party to a proceeding by or against an executor appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of deceased concerning the same subject matter in his own favor may also be

proven, does not include declarations of a deceased agent of deceased.

Executors and Administrators—Verified Claim Against Estate Sufficient if Showing Substantial Subsisting Liability in Favor of Claimant.

4. As no particular form for a claim presented against an estate is prescribed, it is sufficient if the claim and affidavit show a substantial subsisting liability in favor of the claimant and notify the representative of the estate of the character and amount of the claim, the facts of which may be asserted in general terms, and need not be stated with the particularity required in an action at law.

Work and Labor—Law Implies Promise to Pay Reasonable Amount for Services Rendered.

5. The general rule is that, where valuable services are rendered by one for another, the law implies a promise to pay whatever sum the services are reasonably worth.

Work and Labor—Burden on Child to Prove Express Agreement of Parent to Pay for Services.

6. The general rule that the law implies a promise to pay the reasonable worth of services does not apply to a parent and child, and the law not only refuses to imply a promise to pay where one serves the other, but, on the contrary, it presumes that such service was rendered gratuitously, and this presumption can only be overcome by evidence of an express agreement, or its equivalent, to pay.

Work and Labor—Stepfather Merely Because of Relation Does not Stand in Loco Parentis to Stepson.

7. The relation of stepfather and stepchild does not of itself impose any duty upon one to the other, or create any right assertable by one against the other, and the mere fact that one is the stepfather and the other a stepson does not impose upon the one the duty to support or upon the other the duty of service.

Parent and Child — Stepfather Receiving Stepson as Member of Family Places Himself in Loco Parentis.

8. Where a stepfather receives a stepson into his family and treats the child as a member of his family, he places himself in loco parentis, and the reciprocal rights and duties of parent and child are thus created, and will continue to exist as long as the stepfather continues to stand in that position.

Work and Labor—Stepson Living With Stepfather as Member of Family must Prove Express Contract for Payment of Services.

9. Where a stepson lives with the stepfather as a member of his family, and by reason of that fact the stepfather stands in loco parentis to the stepchild, it is necessary for the stepchild to allege and prove an express contract, or its equivalent, to recover for services rendered.

8. Right of child to recover for services during minority to person standing in loco parentis, see note in 20 Ann Cas. 394.

Implied agreement to pay for services rendered to stepparents, see note in 11 L. R. A. (N. S.) 885.

Work and Labor—Bare Fact of Relationship of Stepfather and
    Stepson not Sufficient to Overcome Implication of Promise to
    Pay for Services.

10.   The bare fact of the relationship of stepfather and stepson
is not enough to overcome the implication of a promise to pay
for valuable services rendered by the stepson.

Executors and Administrators—Where Necessary to Prove Express
    Agreement for Services, not Essential That Claimant Show
    Agreement as to the Amount.

11.   Where a claim was filed against the executor of deceased for
services rendered by stepson, even though the relation of step-
father and stepson existed, and for that reason it became necessary
for plaintiff to prove an express agreement to pay, it is not essen-
tial that claimant show that the parties agreed upon the amount
of the compensation.

Executors and Administrators—Action on Quantum Meruit for
    Services Held Within Rule That Claimant must Sue on Claim
    Presented.

12.   Complaint in an action against an executor on a verified
claim for the reasonable amount of service *held* within the rule
requiring that the claimant must sue on the claim which he
presented to the executor.

Appeal and Error—Charge Held not Prejudicial.

13.   In an action against an administrator for services rendered
under alleged agreement with deceased, where the answer admitted
the services, but alleged payment, charge that the jury might consider
admissions in the answer as to the amount due the plaintiff *held*
not prejudicial to defendant.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

Walter Kinnaman and his wife resided in Tilla-
mook County. The plaintiff Robert Sargent, a son
of Mrs. Kinnaman and a stepson of Walter Kinna-
man, resided in Eastern Oregon. On about Novem-
ber 1, 1916, Walter Kinnaman became blind, and
caused a letter to be written to the stepson, who was
an unmarried man, stating that he "wanted me to
come to Tillamook." Sargent complied with the re-
quest, and went to Tillamook, arriving there about
December 1, 1916. As we understand the record
Walter Kinnaman and his wife lived in the City of
Tillamook until about March 15, 1917, when they and

Sargent moved upon a twenty-acre farm owned by Walter Kinnaman and located in Tillamook County near a place called Beaver. There was a house but no barn on the land in March, 1917. After Kinnaman and his wife and the plaintiff moved to the farm, a barn was built.

Sargent, who had not seen the farm prior to moving there, says that his stepfather told him that he had 20 acres near Beaver; "that the place would run eight cows by fixing it up"; and that "he told me he would give me half of the proceeds of the farm and I could go out and work if I wished to do so." Such was the arrangement, Sargent says, before they moved to the farm. Sargent states that he repaired fences and helped to build the barn. The plaintiff testified that when they "went out there" his stepfather had only two cows and a stripper; that he (Sargent) "traded this stripper off for another cow and paid $17 to boot out of my money. That gave us three cows and later on we bought another cow * * and I had four cows then." According to the testimony of the plaintiff, his stepfather concluded that it would be too expensive to build a barn large enough for eight cows, and for that reason the step-father told the plaintiff "we better wait awhile; and we better keep the cows we had." Sargent testified that after they had been on the farm for a time his stepfather "told me that the milk wasn't very big and the place was quite an expense, and when he got the place fixed up and paid the taxes there wasn't anything left; and "he told me that he would pay me better than wages; and he told me that more than once." Sargent worked on the farm until October 4, 1917, when he quit and left.

Walter Kinnaman died in July, 1919, and on August 1, 1919, Harley Foland was appointed executor

of the estate. Sargent presented to the executor a verified claim against the estate for $1,000 for "labor on the Walter Kinnaman ranch near Beaver, Tillamook County, Oregon, for about two years beginning December 1, 1916, and ending December 1, 1918." This claim was rejected by the executor, and thereupon Sargent brought this action against the executor to recover $1,000. In the complaint it is alleged that Walter Kinnaman employed the plaintiff "to operate, conduct and work upon" the farm, "and in pursuance of said employment plaintiff operated, conducted and worked upon said farm" from December 1, 1916, to December 1, 1918, "and that the reasonable value of the services of plaintiff" is $1,000.

The defendant answered by denying that Sargent had been employed by the decedent as alleged in the complaint and denied that the estate was indebted to the plaintiff. The defendant also pleaded an affirmative defense and counterclaim. The defendant avers in his counterclaim that on about March 15, 1917, the plaintiff entered upon the farm under an agreement with the decedent whereby

"the plaintiff might run said farm and care for and milk said cows and do whatever outside work he might be able to do or saw fit to do after attending to said farm and said cows and that the said Walter Kinnaman and the said plaintiff should share equally and divide equally the proceeds derived from the milk produced by said cows each to receive one half of said proceeds and the plaintiff to be independent of any supervision or control of the said Walter Kinnaman, in any manner whatsoever."

The defendant avers that the plaintiff continued to work under the terms of this agreement until some time in October, 1918, when he abandoned the agreement; that the plaintiff milked four cows, and that—

"During the times that the plaintiff attended the same under said agreement there was produced and sold milk from said cows to the amount of about $600, the exact amount this defendant is unable to state and that the plaintiff never at any time paid over to the said Walter Kinnaman, his one half of the proceeds of said milk, or any part thereof, and that there has been due and owing and is now due and owing from the plaintiff to the estate and this defendant as executor of said estate, the sum of $300 or more.

The answer concludes with a demand for a judgment against the plaintiff for $300.

The jury returned a verdict for $300 in favor of the plaintiff, and the defendant appealed from the consequent judgment.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Webster Holmes* and *Mr. T. H. Goyne,* with an oral argument by *Mr. Holmes.*

For respondent there was a brief over the name of *Messrs. Botts & Winslow,* with an oral argument by *Mr. George P. Winslow.*

HARRIS, J.—The theory of the plaintiff, as shown by the record, is that he and his mother and step-father moved to the farm with the understanding at first that the plaintiff would do the work of operating the farm in consideration of one half of the proceeds derived from sales of milk. Originally it was the purpose to milk eight cows but because of the expense the decedent concluded not to attempt to keep more than four cows. Apparently because of this change of plan as to the number of cows to be kept and milked, a change was made in the agreement as to Sargent's compensation for his work, and

so it was understood, according to the testimony of Sargent, that Kinnaman would pay the plaintiff "better than wages." The plaintiff therefore says that he is entitled to recover the reasonable value of the work done by him, and he fixes the amount at $1,000.

The theory of the defendant is that all the work done by the plaintiff was done under an agreement whereby the plaintiff was to receive one half of the proceeds derived from the sales of milk. In the answer it is alleged that about $600 was received for milk sold, and it is impliedly charged that all the proceeds from the sales of milk were received by Sargent, and that he did not pay any of the proceeds to the decedent; and for that reason the defendant demanded a judgment against the plaintiff for $300. However, it was stipulated

"between the plaintiff and the defendant by their attorneys that all of the milk checks that were received during the operation of the farm by the plaintiff were made to Mrs. Kinnaman."

There is no evidence whatever indicating that the plaintiff received even a cent in cash; and, therefore, in view of the stipulation it is accurate to state that all of the proceeds derived from the sales of milk were received by Mrs. Kinnaman. Some milk checks were received in evidence, and, although we do not find the checks among the papers presented for our examination, we understand from the record that these checks bear the indorsement of Mrs. Kinnaman only. Sargent testified that he never received any of the moneys derived from the sales of milk, and there is no evidence indicating or even suggesting that Mrs. Kinnaman or her husband paid to the plaintiff any of the moneys received from sales of milk. The plaintiff was the first witness to testify.

He had explained about his coming from Eastern Oregon, about moving to the farm, about the original agreement, about the repairing of fences and the building of the barn, when he was asked the following question and gave the following answer:

"Q. When you went out there how many cows were there?

"A. Three—two cows and a stripper. And I traded this stripper off for another cow and paid $17 to boot out of my own money. That gave us three cows. And later on we bought another cow. And I gave $50 for that cow; and I had four cows then. And· that fall I bought three loads of hay from a man called Swartz down below Beaver."

1, 2. The defendant objected "to any evidence about his buying cows and hay." The portion of the answer to which objection was made was not responsive to the question asked the witness; nor was it relevant to any issue raised by the pleading. The defendant ought to have moved to strike out the irrelevant part of the answer and requested the court to instruct the jury to disregard it. Notwithstanding the irrelevancy of part of the answer, it could not, in view of all the circumstances, as we read the record, have injured the plaintiff at all.

3. The defendant complains because the court refused to permit Mrs. ·Blanche Broughton to testify that she heard Mrs. Kinnaman say to Walter Kinnaman:

"You know we can't get anyone else to do the work for half the° milk checks."

Mrs. Kinnaman died before the trial in the Circuit Court. There was evidence from which the defendant could have argued that Mrs. Kinnaman "was transacting business for" her husband; and for that reason the defendant contends that Mrs. Broughton

ought to have been permitted to testify. The inference to be drawn from the proffered testimony is that Mrs. Kinnaman was endeavoring to persuade her husband to pay the plaintiff something in addition to one half of the proceeds from the milk sales, and that the declaration attributed to her was in effect the declaration of Walter Kinnaman for the reason that she was attending to his business as his agent. Section 732, Or. L., provides that:

"When a party to an action, suit, or proceeding by or against an executor appears as a witness in his own behalf, or offers evidence of statements made by deceased against the interest of the deceased, statements of the deceased concerning the same subject matter in his own favor may also be proven."

If the declaration had been made by Walter Kinnaman it would be competent under Section 732, Or. L., but the language of that section does not include the declaration of an agent.

4. The court received as evidence, over the objection of the defendant, the verified claim which the plaintiff had presented and the executor rejected; and the defendant insists that this ruling was erroneous. The statute does not prescribe any particular form for a claim presented against an estate. It is sufficient if the claim and affidavit show a substantial subsisting liability in favor of the claimant and notifies the representative of the estate of the character and amount of the claim. The facts constituting the claim may be asserted in general terms and need not be stated with the particularity required in an action at law: *Wilkes* v. *Cornelius*, 21 Or. 348, 350 (28 Pac. 135); *Tharp* v. *Jackson*, 85 Or. 78, 85 (165 Pac. 585, 1173); *In re Anderson's Estate*, 101 Or. 94 (198 Pac. 236, 238); *Branch* v. *Lambert*, 103 Or. 423 (205 Pac. 995, 1002).

5. The defendant insists that the verified claim was insufficient and therefore inadmissible because it fails affirmatively to declare that the services were rendered pursuant to an express promise by the decedent to pay for them. Indeed, the verified claim is based, so far as it appears on its face, upon an implied promise inferred by the law. It is also argued that the complaint is vulnerable because it fails to allege an express promise by the decedent to pay. In other words, the defendant contends that because one was a stepson and the other was the stepfather services rendered by the former are presumed to have been gratuitous unless the services were rendered under an express agreement or unless the circumstances show that the one expected to receive and the other expected to make payment.

6. The general rule is that where valuable services are rendered by one for another, the law implies a promise to pay whatever sum the services are reasonably worth. But this general rule does not apply to a parent and child. It is so usual and so natural for a parent, prompted only by parental love and the instincts common to the human race, to serve the child, and it is likewise so usual and so natural for the child, moved solely by filial affection and the common human instincts, to serve the parent, that the law not only refuses to imply a promise to pay where one serves the other, but on the contrary it presumes that such service was rendered gratuitously. And this presumption can only be overcome by evidence of an express agreement, or its equivalent, to pay: *Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135); 29 Cyc. 1630. The relation of parent and child of itself creates the presumption of gratuitousness; and since this presumption cannot be overcome except by force

104 Or.—20

of an express agreement, or its equivalent, it logically follows that the burden of proof is on the child to allege and prove an express contract, or its equivalent: *McGarvey* v. *Roods*, 73 Iowa, 363 (35 N. W. 488); 29 Cyc. 1620, 1621.

7. If the relation of stepfather and stepchild, like that of parent and child, of itself raises a presumption of gratuitousness, then the verified claim presented by the plaintiff to the defendant was insufficient, and the complaint, although it alleges that the decedent "employed plaintiff," is at least subject to criticism, even though it might not be fatally defective. The relation of parent and child of itself creates reciprocal rights and duties. On the contrary, the relation of stepfather and stepchild does not of itself impose any duty upon one to the other or create any right assertable by one against the other. The mere fact that one is the stepfather and the other a stepson does not impose upon the one the duty of support or upon the other the duty of service: *Gerber* v. *Bauerline,* 17 Or. 115, 117 (19 Pac. 849); *Wilson's Guardianship,* 40 Or. 353, 358 (68 Pac. 393, 69 Pac. 439); *State* v. *Langford,* 90 Or. 251, 267 (176 Pac. 197); *Bartley* v. *Richtmyer,* 4 N. Y. 38 (53 Am. Dec. 338); 20 R. C. L. 594; 29 Cyc. 1667.

8. A stepfather does not, merely because of the relation, stand *in loco parentis* to his stepson. If, however, a stepfather receives a stepchild into his family and treats the child as a member of his family he places himself *in loco parentis,* and the reciprocal rights and duties of parent and child are thus created and will continue to exist as long as the stepfather continues to stand in that position: *Gerber* v. *Bauerline,* 17 Or. 115, 117 (19 Pac. 849); *Daniel* v. *Tolon,* 53 Okl. 666 (157 Pac. 756, 4 A. L. R. 704); *People* v. *Porter,* 287 Ill. 401 (123 N. E. 59, 7 A. L. R. 1041).

9. If the stepson lives with the stepfather as a member of his family and by reason of that fact the stepfather stands *in loco parentis* to the stepchild, then it necessarily follows that in such circumstances the stepchild is required to allege and prove an express contract, or its equivalent, for the same reason that a child is required to allege and prove such a contract.

But suppose that the stepchild does not live with the stepfather as a member of his family. The bare fact of the relation of stepfather and stepchild does not create any duty or give rise to any right as between them; and consequently it would be illogical and inconsistent to say that any presumption of gratuitousness arises out of the single fact that services are rendered by a stepson for a stepfather. It is entirely possible for a stepson to render services to a stepfather or for a brother to perform work for a brother or sister on a promise implied by the law to pay for the services, just as in the case of services rendered by one stranger for another; and therefore it was not necessary for the stepson to allege or prove an express contract or its equivalent Nor was it necessary for the plaintiff to state in his verified claim or to aver in his complaint that he had not lived with his stepfather as a member of his family. If the verified claim had shown that the stepson lived with the stepfather as a member of his family, then it would have been necessary for the claimant to show an express contract, or its equivalent, in order to meet the requirements of the rule announced in *Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135). But the verified claim did not show a family relationship; nor can it be said that the evidence undeniably establishes such a relationship. The evidence is meager upon the subject. We know from the record that the step-

son, the mother and the stepfather moved to the farm and that they lived there; and this is substantially all that the record shows. We do not know, and cannot know, from the record the circumstances surrounding them, except as already stated. Moreover, the defendant did not at the trial nor does he now claim that the decedent stood *in loco parentis* to the plaintiff.

The implication which ordinarily arises where one person accepts valuable services rendered by another is overcome where the parties are parent and child, or perhaps it is more accurate to say that where the parties are parent and child the law, instead of presuming a promise to pay, presumes that service rendered by the child was gratuitous; but where the relationship is more remote than that of parent and child, the relationship is not of itself sufficient to overcome the implication which the law ordinarily raises where one party renders valuable services for another. Where one is a stepfather and the other is a stepson the fact of the relationship unaccompanied by any other fact does not create a presumption that service rendered by one for the other was gratuitous; but if the fact of such relationship is accompanied by the fact that the stepson lived with the other as a member of his family, the presumption arises that the service rendered by the stepson was intended to be gratuitous; and when this presumption arises the claimant must show an express contract, or its equivalent. The moment it appears that the stepson lived with his stepfather as a member of the latter's household then at that moment it devolves upon the stepson to show an express contract, or its equivalent, to pay for services rendered; but if it does not appear from the showing made by the stepson or from that made by the step-

father that the family relation subsisted, then the stepson is not necessarily required to show an express contract, or its equivalent, to pay for services rendered. There are some precedents, as, for example, *Hudson* v. *Lutz*, 50 N. C. 217, and *Sharp* v. *Cropsey*, 11 Barb. (N. Y.) 224, see, also, 13 R. C. L. 1189), where the language used by the court might seem to lay down the rule that if a stepchild renders service for a stepparent the service is presumed to have been rendered gratuitously; but an examination of those cases and others employing like language will disclose that one party lived with the other as a member of his family, and therefore, as applied to the actual facts, the language employed by the court was not only appropriate but a correct statement of the rule acknowledged everywhere.

10. Our conclusion that the bare fact of relationship of stepfather and stepson is not enough to overcome the implication of a promise to pay for valuable services rendered is, it seems to us, logical and consistent; and, furthermore, it is supported by the following precedents: *Smith* v. *Milligan*, 43 Pa. 107; *Horton's Appeal*, 94 Pac. 62; *Curry* v. *Curry*, 114 Pa. 367 (7 Atl. 61); *Gerz* v. *Demarra*, 162 Pa. 530 (29 Atl. 761, 42 Am. St. Rep. 842); *Ellis* v. *Cary*, 74 Wis. 176 (17 Am. St. Rep. 125, 42 N. W. 252, 4 L. R. A. 55); *Williams* v. *Williams*, 114 Wis. 79 (89 N. W. 835); *Wence* v. *Wykoff*, 52 Iowa, 644 (3 N. W. 685); *Callahan* v. *Riggins*, 43 Mo. App. 130; *Moore* v. *Renick*, 95 Mo. App. 202 (68 S. W. 936); *Cowell* v. *Roberts*, 79 Mo. 218. See, also, *Briggs* v. *Briggs*, 46 Vt. 577; *James* v. *Gillen*, 3 Ind. App. 472 (30 N. E. 7); *Gill* v. *Staylor*, 93 Md. 453 (49 Atl. 650); *Disbrow* v. *Durand*, 54 N. J. L. 343 (24 Atl. 343, 33 Am. St. Rep. 678); note in 11 L. R. A. (N. S.) 882.

11. If the family relation did not subsist between the plaintiff and the defendant, the law may imply a promise to pay for valuable services. But even though the family relation did exist and for that reason it became necessary for the plaintiff to prove an express agreement to pay, or an expectation on the part of one to receive and an expectation on the part of the other to pay, it was not essential that the plaintiff show that the parties agreed upon the amount of the compensation: *McGarvey* v. *Roods*, 73 Iowa, 363 (35 N. W. 488).

12. It is true that the claimant must sue on the claim which he presented to the executor, but it is also true that the plaintiff complied with this rule. It is true that the verified claim is for the reasonable value of the services; but it is also true that the complaint does not depart from the verified claim, for the complaint is based upon the theory that the plaintiff is entitled to recover the reasonable value of his services. The plaintiff testified that the decedent promised to pay "better than wages"; but the plaintiff is not seeking to recover "better than wages," for he is endeavoring to recover only the reasonable value of his services. Indeed, if the plaintiff was not a member of the decedent's family and the parties had agreed upon a fixed amount as compensation, the plaintiff could, after the completion of the work, have presented his claim and filed his complaint based on *quantum meruit* and proved an express contract fixing the price: *Tharp* v. *Jackson*, 85 Or. 78 (165 Pac. 585, 1173); *Toy* v. *Gong*, 87 Or. 454, 461 (170 Pac. 931).

13. The defendant assigns as error the giving of the following instruction:

"The main question here is, was the plaintiff employed by Kinnaman, and, if employed, what were the terms of the agreement? And you must determine that from the evidence. And before the plaintiff can recover he must be corroborated. But you have a right to take into consideration any admissions you may find in the answer as to the amount due the plaintiff."

The defendant excepted to that part of the quoted instruction "which speaks of the admissions in the answer, as to the amount of money received." The instruction to which objection is made was the last instruction given before the giving of the statutory instructions which, in this instance as in most cases, constitute the concluding portion of the charge to the jury. The court had previously told the jury that the answer alleged that milk worth $600 had been sold and that the plaintiff had not only been paid by reason of having received and retained $300 but that he had not paid over to the decedent the remaining $300 and that because of such failure the plaintiff was indebted to the defendant in the sum of $300. In substance the court instructed the jury that the defendant admitted that the plaintiff had earned $300 but alleged that the plaintiff had been paid. The defendant did not except to any of these instructions which preceded the one now under examination.

The instruction challenged by the defendant could not in any possible view have injured him. The plaintiff says he worked on the farm; the defendant also says that the plaintiff worked on the farm. The plaintiff says that he did the work for compensation to be paid; the defendant also says that the plaintiff did the work for compensation to be paid. The plaintiff says that he earned $1,000; the defendant denies that the plaintiff earned $1,000, but the defendant

does in effect say that the plaintiff earned $300. The plaintiff says that he has not been paid; the defendant says in his answer that the plaintiff has been paid by reason of having received $600 from the sales of milk and that he is entitled to retain $300 as payment but that he owes the remaining $300 to the defendant. However, during the trial the defendant stipulated that "all of the milk checks that were received during the operation of the farm by the plaintiff were made out to Mrs. Kinnaman"; and the uncontradicted evidence is that she received the milk checks as agent of the decedent. The record shows that Sargent did not indorse any of the milk checks, and, on the other hand, Mrs. Kinnaman did indorse all of them. The uncontradicted evidence is that the plaintiff did not receive any of the proceeds from the milk checks. In brief, the defendant did, in the final analysis, admit that the plaintiff earned $300 and that no part of that sum had been paid to him. The inference to be drawn from the verdict is that the jury agreed with the defendant, for they allowed the plaintiff only $300. Our conclusion is that the record is free from reversible error, and, therefore, the judgment is affirmed.                                   AFFIRMED.


BEAN, BROWN and McCOURT, JJ., concur.