Argued at Pendleton May 9, affirmed September 25, 1928.

In the Matter of the Estate of LOTTIE MAY McLAIN.

SUSIE SUITOR *v.* FIRST NATIONAL BANK OF HOOD RIVER, Administrator.

(270 Pac. 534.)

For appellant there was a brief over the name of *Mr. Edwin M. Parker,* with an oral argument by *Mr. George R. Wilbur.*

For respondent there was a brief over the name of *Messrs. Carey & Kerr,* with an oral argument by *Mr. C. A. Hart.*

RAND, C. J.—This is an appeal from a judgment against the First National Bank of Hood River,

Oregon, as administrator of the estate of Lottie May McLain, deceased, for services alleged to have been performed for decedent by the claimant, Susie Suitor, during the six years immediately preceding decedent's death, which occurred on October 31, 1925. During the six years in question decedent, a widow, had been engaged in running a boarding and lodging house at Hood River, Oregon, and claimant, who was decedent's aunt, had been living with her at said boarding and lodging house. Besides these two, the family consisted of a young girl whom decedent was raising. After the death of decedent, who died intestate, claimant presented to the administrator a duly verified claim and, upon its rejection, pursuant to Section 1241, Or. L., she presented it to the County Court for allowance, where, after a hearing, it was again rejected. An appeal was then taken to the Circuit Court and, after a trial by the court without a jury, claimant had judgment for $2,880, the full amount of her claim.

There was no question raised in the trial court as to the performance or value of the services. All of the witnesses who testified upon that subject stated that the services were reasonably worth $40 per month and the memorandum opinion of the trial judge recites that the attorneys for the administrator, while denying claimant's right of recovery, stated in open court that if claimant was found to be entitled to recover at all, then the services were reasonably worth $40 per month, and no one questions that fact here. The contention is that because of the blood relationship existing between them, that of aunt and niece, and of their having been members of the same household at the time the services were rendered, the performance of the services raised no

implied promise to pay for them and that, in the absence of an express contract to pay, claimant cannot recover.

■ ■ The general rule is that where one person at the request of another performs beneficial services for him, unless it is agreed or it can be so inferred from the circumstances that the services were to be rendered without compensation, the law, in the absence of any express contract, will imply a promise on the part of him for whom the services were rendered to pay for them what they were reasonably worth.

This rule, however, is subject to the further rule that ordinary services rendered each other by members of the same family living in the same household are presumptively gratuitous and generally, where there are dealings between those of the same family or those closely related by blood or marriage and living together in the same household, a promise to pay will not be implied unless it is shown either by the circumstances surrounding the transaction, or the nature of the services performed, or in some other manner, that there was an expectation that the services, when rendered, were to be paid for. In cases where a promise to pay will not be implied as a matter of law an actual agreement must be proven. The relation of parent and child, brother and sister, or the like, existing between persons living together in the same household creates a strong presumption that no payment or compensation was intended to be made for services rendered by one to the other beyond that received at the time they were rendered. To overcome this presumption, as was said in *Hall* v. *Finch,* 29 Wis. 278, 286 (9 Am. Rep. 559):

" * * The evidence must be clear, direct and positive that the relation between the parties was not the ordinary one of parent and child, or of brother and sister, but that of debtor and creditor, or of master and servant. To establish this new relation, it is obvious that some·arrangement or contract to that effect must be shown. No man is to be made debtor without his knowledge or assent, or under circumstances where he has no reason to expect that such is his position or liability. * * ."

■ It is also a well-settled principle of law that wages for domestic services, such as those involved here, are presumed to be paid at stated intervals and that when a claim for such services is presented against a decedent's estate, extending over any great length of time, the burden is upon the claimant to rebut the presumption. It is, however, a presumption of fact which may be rebutted by competent evidence but until satisfactory evidence is produced, the presumption prevails and the claim must be disallowed: *Cummiskey's Estate*, 224 Pa. 509 (73 Atl. 916, 132 Am. St. Rep. 787); *Winfield* v. *Beaver Trust Co.,* 229 Pa. 530 (79 Atl. 138).

The evidence shows that prior to claimant's going to live with decedent and commencing to work for her she was living at the home of her son in the City of Portland, and that while on a visit to the farm where decedent was then living with her husband, since deceased, decedent and claimant entered into a contract with each other whereby it was agreed that claimant should enter the services of decedent and be paid wages therefor, but there was no stipulation as to the amount of the wages or that the wages should be paid at stated intervals. The evidence further shows that claimant always had money on deposit in the bank and that during all of the time while working for de-

cedent she paid for her own clothing and other personal expenses from her own moneys. The evidence further shows that claimant worked for decedent some twelve years and up to the time of decedent's death had received no wages except $20 which was paid to her while living with decedent on the farm; that decedent's husband died in January, 1919, and that up to that time decedent and her husband were operating a small farm of which they were tenants, and that their income therefrom was very small. It further shows that decedent's husband, before his death, had inherited an interest in some farm land in Canada and also an interest in some real property in Portland, and that upon his death this property descended to decedent as his sole heir; that shortly after his death, decedent sold her interest in the Canadian land and with the proceeds purchased a home in Hood River, Oregon, where she conducted a boarding and lodging house for the six years for which compensation is sought. The evidence further shows that decedent's health was not good and that claimant did most of the work in the boarding and lodging house, and that this work was very exacting and arduous, and that she had also worked very hard while upon the farm. The evidence further shows that decedent often stated to claimant that she did not have the money to pay her wages but that she would pay her as soon as she could sell and dispose of her Portland property; that claimant promised her that she would wait until decedent could dispose of the property. There seems to have been a very strong affection and regard between these two women and a willingness upon the part of claimant, who was much older than decedent, to extend credit to decedent. Claimant's testimony was strongly cor-

roborated by the testimony of numerous witnesses both as to the nature and extent of the services and as to declarations made by decedent that she was going to pay claimant as soon as she disposed of her Portland property.

■ ■ While the relation between these parties was that of aunt and niece, this relationship was not one which imposed upon one of them the duty of support and upon the other the duty of service, nor was claimant dependent upon her niece for a home. She had some means of her own and she had a good home with her son with whom she had been living before entering into service for decedent and before becoming a member of decedent's family. Since this arrangement was made before she became a member of decedent's family, there is no presumption that such services were intended to be gratuitous. The rule in respect thereto is stated in 3 Page on Contracts, Section 1454, as follows:

"If persons who are related are not members of the same family when they enter into an arrangement under which one of them is to render services to the other and if as a result of such arrangement they live together as members of the same family and render services one to the other, there is no presumption that such services are intended to be gratuitous."

■ That decedent did not expect claimant to render such services without compensation is abundantly proved by declarations made to others by decedent, as well as by the testimony of claimant, and hence since the services were not rendered or accepted under an expectation on the part of either that they were to be gratuitous, the law, even in the absence of an express contract, would imply a promise to pay for them, for they were of a character for which com-

pensation would ordinarily be made as between persons who are not related and as between persons who are related where there was an expectation on the part of the one for whose benefit they were rendered and of the one rendering the services that compensation should be made by one and received by the other.

The fact that the evidence shows that the amount of compensation to be paid for the services was not agreed upon is of no importance, since, if claimant is entitled to recover at all, then she is entitled to recover the reasonable value thereof: *Sargent* v. *Foland,* 104 Or. 296 (207 Pac. 349).

■ Defendants contend that there was not sufficient evidence other than that of claimant to entitle her to recover. By Section 1241, Or. L., it is provided that "no claim which shall have been rejected by the executor or administrator, as aforesaid, shall be allowed by any court, referee, or jury, except upon some competent or satisfactory evidence other than the testimony of the claimant." Under this provision the testimony of a claimant alone is not sufficient to establish a claim against the estate of a deceased person which has been rejected by the executor or administrator. There must be other material and pertinent testimony supporting or corroborating the testimony of the claimant sufficient to go to the jury and support a verdict. But this does not mean that the claimant is not a competent witness in his own behalf or that his testimony shall be entirely ignored or disregarded. It shall be considered as any other testimony in the case but with this limitation—that it alone is not sufficient to establish the claim. The provision "is practically an enactment of the English

equity rule, which is that 'a pecuniary demand against the estate of a deceased person will not be considered and established by the oath of the person making such claim, unsupported by any other evidence.' '' *Goltra* v. *Penland,* 45 Or. 254, 265 (77 Pac. 129). "There must be other material and pertinent testimony supporting that given by the claimant sufficient to go to the jury, and on which it might find a verdict." *Branch* v. *Lambert,* 103 Or. 423, 434 (205 Pac. 995).

■ ■ The trial court held, and we think correctly, that there was sufficient corroborating and supporting evidence by witnesses other than the claimant herself which, if the case had been tried by a jury, would have been sufficient to entitle them to find a verdict for claimant. Under our statute in a law action where a jury is waived and the cause is tried by the court, the trial judge is the trier of all questions of fact and his findings of fact have the force and effect of a verdict. Upon an appeal this court is bound by such findings, if there is competent and material evidence to sustain them. The weight and credibility to be given to the evidence, the application of all presumptions of fact, the inferences to be drawn and the deductions to be made from the evidence are all questions for the trial court, and however much in any particular case this court might be inclined to disagree with those findings, if the trial was *de novo,* they are conclusive if based upon material and competent evidence. In passing upon the law and facts of this case, the lower court said:

" * * It is my view that whenever two people live in the family relation, purely and simply, with the ordinary incidents that accompany such relationship,

and no extraordinary incidents exist, then the presumption that recompense was intended is negatived and whatever services were rendered were done by reason of such relationship and were gratuitous; but when the incidents and circumstances are not those 'which are ordinarily associated with such relationship,' then the presumption of an implied agreement to pay attaches. * * The evidence is overwhelming that Mrs. Suitor worked hard and laboriously, and her services were not limited to the ordinary things which one member of a family is glad to do for another, but all the witnesses practically agree that her hours of work were long and that the kind of work which she did was that usually performed by servants who demand and receive compensation. * * It is sufficient to say that this court is convinced that the services rendered and the work done by Mrs. Suitor made it possible for Mrs. McLain to conduct her boarding-house, and without such services it would have been impossible for her to have done so. To some degree, though probably not as much, the same statement would apply to Mrs. Suitor's work upon the farm before they moved into town. With the conclusion thus reached as to the kind and character of Mrs. Suitor's services, it is my belief that they were not of the kind which are ordinarily associated with the relationship existing between kinsfolk, and that, therefore, they are not included in the doctrine of relationship but bring this case under the presumption, well established, that a contract to pay is presumed from the acceptance of beneficial labor, unless the relationship of the parties is such as to forbid the presumption.''

We think that the court's view of the law of the case was proper and that the evidence was sufficient to sustain the findings and that, under the facts of this case, the ordinary implication that the services were to be paid for at their fair value was the only

implication that could be drawn from the evidence in the case. For these reasons the judgment appealed from must be affirmed. AFFIRMED.

COSHOW, BEAN and ROSSMAN, JJ., concur.