Submitted on briefs November 17; affirmed December 22, 1942

In re Patton's Estate
CHARLTON *v.* PATTON
(132 P. (2d) 402)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*W. C. Winslow*, of Salem, for appellant.
*Carson & Carson*, of Salem, for respondent.

■ BRAND, J. The circuit court and the parties apparently had in mind the provisions of O. C. L. A. 19-704 which regulates the procedure before the county court when a creditor's claim has been presented to an executrix and rejected. That statute provides that the county court

> "\* \* \* shall have power to hear and determine in a summary manner all demands against any estate \* \* \* which have been so rejected \* \* \*."

Under this statute the order of allowance or rejection of a claim is regarded as a judgment in an action at law. *In re Anderson's Estate*, 157 Or. 365, 71 P. (2d) 1013 (1937), and cases cited. The issue was accordingly tried in a summary manner without formal pleadings, but notwithstanding the procedure adopted, all parties and the circuit court seem to have proceeded as if in equity, and the appellant still expresses adherence to that view in this court.

■ To be sure, the creditor's claim was filed with the executrix in October, 1935, and the cause was transferred to the circuit court five years later in the form of objections to the final account, and it is true that a hearing upon a final account when tried by the probate court results in a decree, not a judgment. But in this case the only issue presented, as upon objections to the final account, was the validity of Mrs. Charlton's claim as a creditor. It will hardly be argued that an action at law on a contested claim against an executor

could at the instance of the claimant be transformed into a suit in equity by the simple device of asserting the claim in the form of objections to the final account, thereby defeating the executor in the right to a jury trial or to the conclusive effect which attaches to a judgment. But in this case the claim was allowed over the objection of the executrix, who now appeals. She, of course, does not assert that the order allowing the claim is conclusive as a judgment at law. She introduced evidence of purely equitable cognizance and still insists in this court that the proceeding was in equity, perhaps because on the final hearing upon a final account a court does render a decree. O. C. L. A. 19-1006. Our statute, O. C. L. A. 13-502, provides in substance that any contested probate matter in the county court other than upon a creditor's claim for less than $500 shall, on motion, be transferred by the county court to the circuit court

"* * * and therein proceed and be tried and determined in the same manner and with like effect (except as hereinafter otherwise provided) as though it were proceeding and being tried and determined in the county court * * *. An appeal shall lie to the Supreme Court from the decree or other appealable determinative order of the circuit court in such contested matter, in like manner and with like effect as though it were from a decree or other appealable determinative order of such circuit court in a suit in equity."

In view of the procedure actually followed in this case we find no difficulty in applying the quoted provision from O. C. L. A. 13-502 and in determining the cause

"* * * in like manner and with like effect as though it were from a decree or other appealable determinative order of such court in a suit in equity."

The claim of Mrs. Charlton for rent in the sum of $1,173.48 was conclusively established from the evidence of the executrix herself. The only controversy relates to the validity of the charges against Mrs. Charlton asserted by the executrix and which, if valid, would equal or exceed Mrs. Charlton's credit for rent. We now consider the facts on which the executrix predicates her claim of set-off.

For a long time prior to December 19, 1929, E. Cooke Patton and Hal D. Patton were partners in the ownership and operation of the book store business located on State street in the city of Salem, Oregon, and known as Patton Bros. The partnership business continued until the death of E. Cooke Patton in December, 1929. Sadie LaLonde Patton was the wife of E. Cooke Patton, deceased, and Luella M. Charlton was his daughter. The will of E. Cooke Patton contains the following provision with reference to the partnership business:

"I am the owner of an undivided one-half interest in the partnership business of Patton Brothers in Salem, Oregon, my brother, Hal D. Patton being the owner of the other undivided one-half interest of said business and I hereby direct that in the event of my death my brother Hal D. Patton, shall continue to conduct and operate said business as the sole manager thereof and I hereby authorize him to conduct and operate said business for such time and in such manner as in his judgment he shall deem best for the interests of said business and in the event my wife, Sadie LaLonde Patton, shall survive me she shall be entitled to receive one-half of my one-half interest in the net profits of said partnership business for and during the period of her natural life or until said business shall be sold and in the event said business shall sustain any loss, my wife, Sadie LeLonde Patton, shall bear one-half of such loss as shall be apportioned against

my said one-half interest in said business, and her proportion of said loss shall be paid by deductions from any revenues to which she shall become entitled from my estate. In the event said business shall be sold during the lifetime of my wife, Sadie LaLonde Patton, then one-third of the net proceeds of said sale belonging to my estate by virtue of my one-half interest in said business shall be paid to my wife, Sadie LaLonde Patton, for her own use and benefit absolutely.''

Under the terms of the will Mrs. Charlton as heir of her father received all of his half interest in the business and property of Patton Bros. except the interest therein which was bequeathed to Sadie LaLonde Patton by the foregoing provision of the will. In September, 1930, Mrs. Charlton purchased all of said interest of Sadie LaLonde Patton and thereby became, at least in equity, the owner of a full one-half interest in the business formerly conducted by Patton Bros. Pursuant to the provisions of the will, Hal D. Patton continued to carry on the business of the former partnership until his death on July 23, 1934. Edith Louise Patton was appointed executrix of the estate of her husband, Hal D. Patton, and it is she who now, as the executrix, asserts a claim against Mrs. Charlton as a set-off against the acknowledged rent claim. It is the contention of the executrix that under the terms of the will a new partnership was formed between Mrs. Charlton and Hal D. Patton and that between the time of the death of E. Cooke Patton in December, 1929, and the death of Hal D. Patton on July 23, 1934, the alleged partnership of Mrs. Charlton and Hal D. Patton suffered losses to such an extent that the entire investment in the book store business was wiped out and that after the liquidation of all of the assets of the business

the alleged partnership would still be indebted in a substantial amount.

Proceeding upon this theory Edith Louise Patton, executrix of the estate of Hal D. Patton, secured her appointment also as executrix of the alleged partnership estate of Hal D. Patton and Mrs. Charlton. Four months after the death of Hal D. Patton she applied to the county court for permission to sell the "partnership" property. The sale was authorized, made, and was approved by the county court on May 29, 1935. That sale failed to produce funds sufficient to pay the apparent liabilities as shown by the reports of the executrix.

Apprehending a net loss after the complete exhaustion of the invested capital the executrix demanded of Mrs. Charlton that she bear one-half of the loss as a partner of Hal D. Patton. Mrs. Charlton denied any liability, whereupon in October, 1936, the executrix brought suit for a declaratory judgment against Mrs. Charlton. It is unnecessary to repeat in detail the pleadings in that case. It is sufficient to say that the will of E. Cooke Patton was set forth, and the relationship of Hal D. Patton and Mrs. Charlton under the will and in the operation of the business was placed directly in issue. It was alleged that the business had suffered "tremendous losses" and the prayer of the complaint was for a declaration to the effect that Mrs. Charlton and Hal D. Patton were partners from the death of E. Cooke Patton to the death of Hal D. Patton and

"* * * decreeing that defendant (Mrs. Charlton) is liable for one-half of any deficiency that may remain after all the assets of the estate are disposed of in order fully to liquidate the claims against the estate * * *."

The defendant, Mrs. Charlton, answered denying the alleged partnership and any liability for losses. The cause was tried, and on August 9, 1937, the circuit court entered a decree wherein it was held:

"1. That defendant and HAL D. PATTON were not partners doing business as 'Patton Bros.' during the time of the operation of said business known as 'Patton Bros.' from the death of E. COOKE PATTON to the death of Hal D. Patton; and that the defendant is not liable for any debts of said business by virtue of any alleged partnership relation with said Hal D. Patton or otherwise.

"2. That by reason of the defendant's purchase of the interest of SADIE LaLONDE PATTON in the estate of E. Cooke Patton, such interest in the hands of defendant is liable for losses sustained by said business of Patton Bros., as provided in the will of E. Cooke Patton * * *."

It is true that neither party to the instant litigation has set up the former adjudication in any pleading, but in the case at bar there were no formal pleadings, and reliance is placed upon the former adjudication only for evidentiary purposes as establishing certain issues which are also involved in the present litigation. The judgment roll in the declaratory judgment case was introduced in evidence by stipulation of the parties. That judgment was rendered between the identical adversaries who are opposed in the instant litigation. It determined certain issues which the executrix seeks to re-litigate here. That adjudication is conclusive here upon such issues as were then decided and are now in litigation.

"The rule that an estoppel by judgment to be available must be pleaded does not apply where as in the case at bar the judgment instead of being relied upon in bar of the action, is attempted to be

introduced in evidence merely as conclusive of some particular fact formerly adjudicated. In such case, it need not be pleaded in order to make it conclusive." *Farmers & Fruit-Growers' Bank v. Davis,* 93 Or. 655 at p. 665, 184 P. 275 (1919).

As strongly supporting the conclusions reached by the trial court on the declaratory judgment case, see *Stewart v. Robinson,* 115 N. Y. 328, 22 N. E. 160, 5 L. R. A. 410 (1889) and 47 C. J. 1073, § 666.

■ We conclude that Mrs. Charlton "is not liable for any debts of said business by virtue of an alleged partnership with said Hal D. Patton."

But the declaratory judgment also provides:

"That by reason of the defendant's purchase of the interest of SADIE LaLONDE PATTON in the estate of E. Cooke Patton, such interest in the hands of defendant is liable for losses sustained by said business of Patton Bros., as provided in the will of E. Cooke Patton * * *."

It therefore becomes necessary to determine the extent "as provided in the will of E. Cooke Patton" to which the former interest of Sadie LaLonde Patton in the estate (now in the hands of Mrs. Charlton) is liable for losses sustained by the business. The will of E. Cooke Patton provides:

"* * * and in the event said business shall sustain any loss, my wife, Sadie LaLonde Patton, shall bear one-half of such loss as shall be apportioned against my said one-half interest in said business, *and her proportion of said loss shall be paid by deductions from any revenues to which she shall become entitled from my estate.*" (Italics ours.)

■ In the absence of partnership any liability of Mrs. Charlton rests solely upon this provision of the will and upon the fact that she is assignee of the interest of Sadie LaLonde Patton, whose interest was subject to the provision of the will concerning losses. It will be observed that it is specifically provided that the losses, if any, to be borne by Mrs. Charlton shall be paid by deductions from any *revenues* to which she shall become entitled from the estate of E. Cooke Patton. The contract whereby Mrs. Charlton purchased the interest of Sadie LaLonde Patton was dated September 19, 1930, and is in evidence as Exhibit N. The will of E. Cooke Patton was in evidence as Exhibit M. Concerning these instruments, the appellant in her brief says:

> "This contract and the will of E. Cooke Patton (Exhibit M) disclose that the assets and income from the estate which Sadie LaLonde Patton would have received had she not sold out would have been amply sufficient to take care of her share of this loss."

We may indulge a presumption that the real property inherited by Sadie LaLonde Patton under the will of E. Cooke Patton and purchased by Mrs. Charlton together with the interest which Sadie LaLonde Patton had in the book store business under the will of her husband would in the aggregate amount to as much as or more than the alleged share of the losses of the business which the executrix seeks to charge against Mrs. Charlton. But the quoted portion of the will discloses that one-fourth of any loss in the business shall be paid by deductions from *revenues* to which Sadie LaLonde Patton or her assignee, Mrs. Charlton, should become entitled from the Sadie LaLonde Patton share of the estate of E. Cooke Patton. We have searched

198

the record in vain for any evidence concerning the amount of such revenues. Thus, even if the amount of the loss in the business were known, and the proportion to be paid by Mrs. Charlton were fixed at one-fourth thereof, we would still be left to speculate as to whether the revenues from which such alleged losses were to be paid have been sufficient to pay the same. If there were no revenues, there was no liability even though losses be proved.

However, the attempt of the executrix to charge a portion of the "losses" to Mrs. Charlton is met by a more serious obstacle. The final question is whether there are any losses to be apportioned. The issue is succintly presented in the brief of the executrix-appellant:

> "We believe it will be conceded by claimant that if Hal D. Patton had a right to charge a salary, and if the salary charged was not excessive, there was a loss. On the other hand, Mrs. Patton, the executrix of the Hal D. Patton estate, will concede that if Hal D. Patton was not entitled to charge a salary during this time then there is no deficit or loss in connection with the business."

 After the death of E. Cooke Patton, Hal D. Patton operated the business under the terms of the will as "sole manager thereof", authorized

> "* * * to conduct and operate said business for such time and in such manner as in his judgment he shall deem best for the interests of said business * * *"

with power to sell. In the exercise of these broad powers over the one-half interest in the business which did not belong to him Hal D. Patton was acting as trustee and was chargeable with duties as such for

the benefit of Luella M. Charlton as heir to a part and assignee of the balance of the one-half interest which had belonged to E. Cooke Patton. As such trustee he was entitled to reasonable compensation.

> "Except as stated in § 243, the trustee is entitled to compensation out of the trust estate for his services as trustee, unless it is otherwise provided by the terms of the trust or unless he agrees to forego or waives compensation." I Restatement of the Law of Trusts, p. 740, § 242.

> "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation." I Restatement of the Law of Trusts, p. 750, § 243.

In the case of a trust to carry on a business, frequently the compensation is determined by a fixed percentage of the net proceeds from the business, but

> "In the absence of a statute providing a definite rule fixing the amount of the trustee's compensation, he is entitled to the fair value of his services in carrying on the business." I Restatement of the Law of Trusts, p. 742, § 242 (c).

With certain exceptions it is also the rule that a trustee is not entitled to indemnity out of the estate for expenses not properly incurred by him in the administration of the trust. See I Restatement of the Law of Trusts, § 245. The fact, however, that he was entitled to some reasonable compensation does not mean that he was entitled to all he assumed to take. A consideration of the evidence convinces us that his claims for salary were, under the circumstances, excessive.

█ Losses in the business were perhaps inevitable during the period of the great depression, and it should

be added that there was no evidence of willful violation by Hal D. Patton of his duty as trustee, but the fact remains that under his sole management the entire capital investment was wiped out. In determining whether the compensation which he claimed was excessive, we must consider the nature and results of his labor, the benefits, if any, which accrued to his beneficiary and all of the pertinent circumstances.

■ Ordinarily, the compensation of a trustee should await the settlement of his account as such and allowance by the court. If he appropriates compensation before it has been fixed and allowed he does so at his own risk, subject to later revision by the court. Such is the rule when compensation is in the form of commissions, 65 C. J. 912, § 808, and the same principle should apply when he appropriates a salary. If he appropriated salary in an excessive amount his account should be surcharged with such an amount paid himself as salary as is in excess of a reasonable compensation. See *Kinney v. Uglow*, 163 Or. 539, 98 P. (2d) 1006.

The evidence concerning the condition and operation of the business is confusing, unorganized and unsatisfactory, but from it we gather the following facts: On January 1, 1930, an inventory showed merchandise in the amount of $15,350.06, which rose to $16,953.14 on October 31, 1931. On January 1, 1934, it had fallen to $11,742.46, a loss of $5,210.68 in four years. The inventory of the appraisers of the alleged partnership estate filed on October 8, 1934, and presumably taken as of July 23, 1934, showed that the merchandise inventory had fallen to $9,534.21. All of the merchandise, furniture and fixtures were sold by the executrix in April, 1935, for $4,850. The assets of the business on January 1, 1930, were $21,027.54 with liabilities of

$7,488.54, showing a net balance of assets over liabilities of $13,539.00. By December 31, 1931, that balance had shrunk to $9,625.45, and on December 31, 1933, it was only $2,347.78. The first report of the executrix concerning the business under date of January 25, 1935, showed assets of $6,661.64 and liabilities in the alleged amount of $9,655.70. From January 1, 1934, to July 23, 1934, under the management of Hal D. Patton and from July 23, 1934, until the sale of the business in April, 1935, under the management of Edith Louise Patton as executrix and from the date of that sale to June 25, 1935, a total period (January 1, 1934, to June 25, 1935) of less than a year and a half, the loss as shown by the books was $5,341.84. How much of this loss was prior to the death of Hal D. Patton and how much thereafter we cannot ascertain. The record does show that during the year 1930 the business lost $1,379.32. In that year Hal D. Patton credited himself and charged the business with $3,000 salary. In 1931 the business lost $2,534.23, and Hal D. Patton credited himself with $2,000 salary. In 1933 the net loss was $3,669.57, and Hal D. Patton credited himself with $2,400 salary. We are unable to find segregated figures for 1932, but it does appear that from January 1, 1930, until his death Hal D. Patton credited himself and charged the business with $11,138.60. In 1930 the sales of merchandise amounted to $25,215.13. In 1933 they were $11,933.02. In 1930 expenses were $8,102.18 and in 1933 they were $6,719.36. Two reports of Lester Barr, an expert accountant, dated December 2, 1931, and March 25, 1932, respectively, were received in evidence and contain a partial analysis of the business. After setting forth the decrease in business, the report states, "However, with the decrease in sales the cost of doing business is excessive." His calculation shows that the

ratio of total expense to sales in 1930 was 44.03 per cent, and in the first ten months of 1931 it was 57.97 per cent.

 In view of the available evidence, we think that the salary taken by Hal D. Patton was excessive. In the year 1933, for example, if the entire business, instead of one-half had belonged to Hal D. Patton, he would have suffered a net loss of $1,269.57, and would have received no salary at all, but as manager of a business, one-half of which was owned by him and one-half by Mrs. Charlton, he drew $2,400 salary, with apparent book loss of $3,669.57. His labors were honestly performed, but his services were of little or no value to the claimant. He was in the position of trustee but never made a report as such to any court and never received any adjudication concerning the amount of his compensation. After his death the sale of Mrs. Charlton's interest was irregular, being made under the direction of the county court by Edith Louise Patton as executrix of a purported partnership estate which never existed. In the absence of a proper showing as to the amount of compensation to which Hal D. Patton was reasonably entitled, we are compelled to act upon the meager evidence presented in the records. The only question before us is as to the amount, if any, of the net loss in the business after the complete exhaustion of its assets. The amount of compensation allowable to Hal D. Patton is material only as it may bear upon the existence of the alleged loss. We need make no specific determination of the amount of salary to which Hal D. Patton was entitled during the period of his trusteeship, but we do hold that the alleged loss in the business after the sale of its assets was due to excessive credits for salary asserted by Hal D. Patton.

There being no loss to apportion, the "judgment" or decree of the circuit court must be affirmed. That court found that the claimant was entitled to the sum of $1,173.48, less a credit thereon in the sum of $91.14 which represented an indebtedness of claimant to the business. The claim of Luella M. Charlton in the amount of $1,082.34 is allowed.

Neither party shall recover costs in this court.

The late Mr. Justice RAND did not participate in this opinion.