Argued April 14; affirmed May 25, 1943

In re Hiller's Estate

## HILLER v. SMITH

(137 P. (2d) 828.)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, BRAND and HAY, Associate Justices.

*Frank H. Hilton,* of Portland, for appellant.

*Roy Harland,* of Salem (W. C. Winslow, of Salem, on the brief) for respondent.

In this case Alice Hiller, a niece of Joseph Hiller, deceased, filed a claim for alleged personal services performed by her for the decedent between the first day of November, 1934, and the time of his death on January 11th, 1939. The verified claim, after specifying in some detail the nature of the services, alleges that

"* * * said services were rendered by the undersigned claimant to the said decedent with the distinct understanding that this undersigned claimant would be compensated therefor."

It is alleged that the reasonable value of said services was the sum of $4,000. The claim was rejected by Frank G. Smith, administrator. On the 10th day of December, 1940, the claimant filed in the county court of Marion County, Oregon, her application for allowance of rejected claim. Thereafter, the county court, upon motion of the claimant, made an order transferring the hearing on said claim to the circuit court of the State of Oregon for Marion County. On June 14th, 1941, and prior to the trial of the claim, all probate jurisdiction of the county court of Marion County and of the county judge thereof was transferred to and vested in the circuit court of Marion County and the judges thereof, and all probate matters pending in the county court were transferred to and continued in such circuit court. Oregon Laws, 1941, Chap. 412, p. 701. Thereafter, and on the 28th day of July, 1941, the claim came on for summary trial before the circuit court for Marion County. A jury was empaneled to try the cause, and a verdict was returned in favor of

the claimant and against the administrator in the sum of $1,750. In August, 1941, an order was made purporting to remove Frank G. Smith as administrator and to appoint William Gahlsdorf in his place. Gahlsdorf, purporting to act as administrator, prosecuted this appeal from the order allowing the claim.

In consequence of the decision of this court in *Smith v. Gahlsdorf, administrator,* 170 Or. 686 decided April 6th, 1943, Gahlsdorf ceased to act as administrator, and Frank G. Smith, "as lawfully acting administrator" has been substituted in this court as defendant-appellant. The trial court was of the opinion that when a jury is employed in a case of this nature, its verdict is only advisory. Consequently, the court "adopted" the jury's verdict and rendered judgment accordingly.

BRAND, J. The first question for our consideration is whether upon this appeal we are bound by the verdict of the jury. The claimant asserts and the administrator denies that claimant was entitled to a jury trial. It must be remembered that the cause was not tried in the county court but was certified to the circuit court for trial. However, we are not called upon to consider the effect of O. C. L. A. 13-502, pursuant to which the contested probate matter was transferred from the county court to the circuit court for trial. The confusing provisions of that statute (see *Charlton v. Patton,* 170 Or. 186, 132 P. (2d) 402, decided December 22, 1942) become irrelevant to this controversy for the reason that prior to the trial in the circuit court, the county court had been deprived of jurisdiction, and all pending probate matters had been transferred by general statute to the circuit court. There was no other court in which the matter could be tried. If, then, the trial of a claim against

an estate is in the nature of an action at law resulting in a judgment with a consequent right to a jury trial at some point in the proceedings, it necessarily follows that plaintiff was entitled to a jury trial in the circuit court. If a jury trial was in fact had in the circuit court, and if the contestants were entitled thereto, then the verdict of that jury was not advisory but was binding upon the trial court and is entitled in this court to the weight and conclusiveness accorded by the constitution to the verdict of a jury.

■ Under the provisions of O. C. L. A. 19-704, the order of allowance or rejection of a claim is regarded as a judgment in an action at law, and either party is entitled to a jury trial. *In re Stout's Estate,* 151 Or. 411, 50 P. (2d) 768, 101 A. L. R. 672; *In re Anderson's Estate,* 157 Or. 365, 71 P. (2d) 1013; *In re Swank's Estate,* 163 Or. 367, 97 P. (2d) 723; *Charlton v. Patton, supra.*

■ It follows from what has been said that this court will not try the case de novo but will limit its inquiry to determining whether the claim as filed is sufficient, whether there is substantial evidence to support the verdict and whether the statutory requirement concerning corroboration has been complied with.

The defendant contends that the instrument filed by the plaintiff failed to state facts sufficient to con stitute a claim against the appellant estate. Two points are made under this assignment of error: first, that

> "A claim against an estate filed by a relative for services of a personal nature such as are usual between such relatives must disclose an express promise and contract to compensate therefor on the part of the decedent."

and, second, that an allegation of "distinct understanding" did not sufficiently set forth a contractual relationship between the claimant and the decedent.

■ As to the first point, we hold upon the authority of *In re Herdman's Estate,* 167, Or. 527, 119 P. (2d) 277, that it was not necessary for the claimant, who was the niece of the decedent, to allege an express contract for payment. It was sufficient to allege facts from which a promise to compensate for services might be inferred. This court in deciding Herdman's case distinguished *Wilkes v. Cornelius,* 21 Or. 348, 28 P. 135, wherein the relation was that of parent and child and wherein it was consequently presumed that the services were rendered gratuitously. The court said:

"We think that the doctrine of that case should not be extended to more remote relationships and that as between brother and sister no presumption unfavorable to the claim will be entertained unless it appears that at the time that the services were rendered the claimant was living as a member of the family of the other party." *In re Herdman's Estate,* supra, 167 Or. at p. 531.

The relationship of niece and uncle is more remote than that of brother and sister, and the plaintiff was entitled upon proper showing to rely upon an implied contract. It is also to be noted that in the case at bar there was no allegation that plaintiff was living in the home of or as a member of the family of the decedent, and the testimony disclosed that she was not. The case of *Richter v. Derby,* 135 Or. 400, 295 P. 457, does not support the defendant's contention. In that case the claimant, although not a blood relative, was living in the home of the decedent and as a member of his family, and although the court seemed to be of the opinion that an express contract had been alleged, it

was held that the plaintiff was entitled to recover on *quantum meruit*.

■■ In view of our conclusion that it was not necessary for plaintiff to allege an express contract, we are of the opinion that the statement of the claim was sufficient to support the verdict. It is alleged that the claimant performed labor and services, specifying them, that the reasonable value was $4,000, and that the services were rendered with the distinct understanding that the plaintiff would be compensated therefor.

> "The facts constituting the claim need not be stated with the same particularity required in a pleading in an action at law, but may be asserted in general terms; and however informal the claim may be, if it show a substantial liability in favor of the claimant and against the estate, it will be sufficient." *Wilkes v. Cornelius,* supra, 21 Or. at p. 351.

The claim constituted at least a defective statement of a good cause of action, which must be held sufficient after the verdict.

The defendant contends that the court erred in denying the motion for a directed verdict. There was substantial evidence that the plaintiff performed services pursuant to the repeated requests of the decedent; that at different times he stated to her that if she would come and stay with him she could have "everything", or words of like meaning; that he did not require of her that she live with him but that she come to his assistance whenever he needed her. There is testimony that she performed substantial services over a long period of time pursuant to the agreement. There is testimony from the mother of the plaintiff to the effect that she knew the general nature of the services performed by the plaintiff and that they were

reasonably worth the amount of the claim. There is testimony from the plaintiff's mother and from Mr. S. J. Smith, a banker, that the deceased in 1934 asked the witness to ''arrange for him to make a will or dispose of his property in some manner in case something happened to him.'' Smith testified that the residence property of the deceased was to be deeded to the plaintiff and the rest of the property was to be disposed of to the Hiller family. The testimony varies as to the exact quantity and amount of property which was to be deeded or willed to the plaintiff, but it substantially supports her contention that she was to be compensated. Defendants placed principal reliance upon the testimony of the plaintiff that she did not expect to be paid. The exact answer given by the plaintiff was as follows:

> ''That is very true, I didn't expect to be paid, because he always told us everything that was his would be ours some day and we always knew that.''

She testified that she did expect to be paid as beneficiary under his will. The testimony of Mr. Smith indicates that the deceased was ill at the time he requested Smith to arrange for the disposition of his property and that upon recovery he forgot about the matter.

■ The plaintiff relies upon the case of *Richter v. Derby,* supra. In that case the plaintiff sued for the reasonable value of services rendered. The complaint alleged that the deceased promised to compensate the plaintiff for the same, a form of allegation commonly employed in actions upon implied contract. The nature of the proof was almost identical to that in the case at bar. The evidence showed that the deceased had stated to the plaintiff that if she would come and

stay with him he would give her his property when he died. The court held that there was evidence of a complete contract to perform labor on the part of the plaintiff and a promise to pay on the part of the deceased.

In *Estate of McLain,* 126 Or. 456, 270 P. 534, the claimant, an aunt of the deceased, filed a claim against the estate for services. In upholding a judgment for plaintiff, the court said:

> "That decedent did not expect claimant to render such services without compensation is abundantly proved by declarations made to others by decedent, as well as by the testimony of claimant, and hence since the services were not rendered or accepted under an expectation on the part of either that they were to be gratuitous, the law, even in the absence of an express contract, would imply a promise to pay for them, for they were of a character for which compensation would ordinarily be made as between persons who are not related and as between persons who are related where there was an expectation on the part of the one for whose benefit they were rendered and of the one rendering the services that compensation should be made by one and received by the other.

> "The fact that the evidence shows that the amount of compensation to be paid for the services was not agreed upon is of no importance, since, if claimant is entitled to recover at all, then she is entitled to recover the reasonable value thereof: Sargent v. Foland, 104 Or. 296 (207 Pac. 349)." *Estate of McLain,* supra, 126 Or. at p. 462.

The only remaining question relates to the sufficiency of the corroborating testimony. Witness Sellwood testified that the decedent stated to him that the decedent's brothers had done considerable work and would be paid and that when the bills were straight-

ened up he intended to leave the rest of his property to the plaintiff. The plaintiff's mother testified that the decedent said to her that if Alice would come and stay with him that he would give her all "his money and things like that" and that he "talked about having some papers made out and he wanted I should make them out and I told him I hadn't any experience making them out, I would see Mr. Smith." The witness told the decedent that the plaintiff could not always stay with him, to which he replied that he "didn't want her only when he needed her." There is evidence that she was always in readiness every time he sent for her. The evidence of several witnesses corroborates plaintiff's testimony concerning the substantial nature of the services performed, and the testimony of plaintiff's mother supported plaintiff's claim as to the reasonable value of her services.

 If we were required to weigh the evidence in this case we would deem it advisable to review the testimony more in detail, but since our only duty is to determine the sufficiency of the claim as filed and to determine further whether there is substantial evidence sufficiently corroborated to support the claim, we think it unnecessary to encumber the record with further testimony. There was substantial evidence tending to show that plaintiff performed services of value at the request of the deceased, from which the jury was entitled to find an implied promise to pay. In fact, there is evidence tending to support an express promise to pay by means of a conveyance of property either by deed or by will. Since no property was thus conveyed in accordance with the promise, the plaintiff was entitled to bring this action in *quantum meruit*.

The judgment of the circuit court is affirmed.