ANNA SNYDER, Appellee, v. JOHN NIXON, Administrator, Appellant.

**EXECUTORS AND ADMINISTRATORS:** Claims for Family Services—Overcoming Presumption. The presumption that services rendered by a daughter to her father, in caring for him in her family, are gratuitous, is not overcome by evidence that the daughter was in indigent circumstances, while the father had financial means for his keep, even though the father was incapable of performing any reciprocal service; but a jury may find the contrary of such presumption by *additional* evidence (1) that other sons and daughters in the neighborhood were financially able to care for their father; (2) that the daughter asserted to her father and to his guardian her expectation to charge for her services, and that neither objected thereto; and (3) that the daughter then continued her services.

**GUARDIAN AND WARD:** Necessaries for Ward—Consent to Furnishing. A guardian of the property and person may, without an order of court, so consent to the furnishing of *necessaries* to his ward as to bind the ward's estate for the reasonable value thereof. So held where the guardian knew that his ward was being cared for by the ward's daughter.

**HUSBAND AND WIFE:** Claims Arising Out of Wife's Separate Business—Care of Parent. Services rendered by a wife in the care of her father, under an express or implied agreement that *she* will be compensated therefor, are recoverable by the wife, without any assignment by the husband to the wife.

*Appeal from Dallas District Court.*—GEORGE B. LYNCH, Judge.

MARCH 16, 1920.

ACTION against a deceased person, father of claimant, for services rendered. Judgment was rendered in favor of plaintiff. The administrator appeals.—*Affirmed.*

*White & Clarke* and *D. H. Miller*, for appellant.

*E. W. Dingwell*, for appellee.

GAYNOR, J.—On the 11th day of April, 1918, the plaintiff herein, Anna Snyder, filed in the district court of Dallas County her claim against the administrator of the estate

1. EXECUTORS AND ADMINISTRATORS: claims for family services: overcoming presumption.

of one Nixon, Sr., for services rendered the deceased during his lifetime. A trial was had to a jury, and a verdict returned for the claimant, and the administrator appeals.

Anna Snyder, the plaintiff, is the daughter of the deceased. The claim is for services rendered in care, board, and washing, and for money advanced and lodging furnished the deceased during a period commencing December 24, 1913, and ending January 27, 1918.

The record discloses that, for a few years prior to December, 1913, deceased was living in South Dakota, at the town of Lemmon, and owned some property there,—at least a home; that he was taken violently sick, and sent for this daughter; that, on the 24th day of December, 1913, she went to him, and removed him from a hotel, at which he was lying sick, to his home, and there aided in caring for him until about the 7th day of February, 1914. On that date, she removed him to her home in Iowa, and there cared for him, administered to his wants, and fed, clothed, and housed him, until his death, which occurred on January 27, 1918. All questions as to the character and value of the services rendered have been settled by the verdict of the jury.

The defendant presents two propositions for reversal:

(1) That the deceased was a member of plaintiff's family at the time the services were rendered, and it is, therefore, presumed that the services were gratuitous.

(2) That no express promise to pay for the services is shown, and there is no such showing of expectation of receiving and making compensation as the law requires, to overcome the presumption that the services were gratuitous.

The general rule is that, where one renders services of value to another, with his knowledge and consent, the presumption is that the one rendering the services expects to be compensated, and that the one to whom the services are rendered intends to pay for the same; and so the law implies a promise to pay. Where, however, the family relationship exists, between the one seeking to recover and the one sought to be charged, and services are rendered one to the other within the family, the presumption is that they were rendered gratuitously. This rests upon common experience, that members of the same family, while the family relationship exists, do not usually expect to be remunerated, and do not usually expect to make remuneration for services rendered by one to the other, rendered within the family circle. The duties are reciprocal, and the services are presumed to be reciprocal. A member of a family, rendering services to another member of the same family, where the services rendered grow out of the reciprocal duties of that family relationship, and are within the scope and -purpose of the family organization, cannot recover therefor, unless there is an express promise to pay for the services, or unless the showing made negatives the thought that they were gratuitous, or, that is, unless it is shown that they are rendered under such circumstances as makes it manifest that there was both an expectation of receiving remuneration and an intention of paying for the services. This doctrine last stated was laid down in *Scully v. Scully*, 28 Iowa 548, and has been followed ever since. The rule generally stated is that, where one renders services for another which are known to and accepted by the other, the law implies a promise on his part to pay therefor; but, where the party served is *a member of the family* of the person serving, a presumption arises that such services are gratuitous. This presumption only arises when the family relationship is shown. We might add to that that it only arises when it is shown that

the services were such as members of the family usually and ordinarily render to each other, because of and growing out of the family relationship. A family has been defined as follows:

"A collection or collective body of persons, not necessarily related, but living under one roof, and under one head or management."

The relationship is not always controlling, though it is a large factor in determining the intent of the parties. The intent to pay may be inferred from facts tending to negative the presumption that they were rendered and accepted as a gratuity. In the instant case, the plaintiff was a poor woman, living with her husband and children, in a state distant from the home of the deceased. Her husband was a laboring man, with but a small income. Deceased was taken sick in Dakota, and sent for this daughter. She came to him in Dakota, took and nursed him through his sickness there, brought him to her home, and nursed and cared for him until his death. During all this time, deceased was feeble in mind and body. Soon after his return, he was placed under guardianship. He was a man of means; while plaintiff had no means of sustaining him, except through the aid of her husband, who was a janitor in a small school in the little town in which he lived. It does not appear that deceased did any work, or that any work was exacted of him. There were no reciprocal services exacted or rendered, nor was he capable of rendering reciprocal services, in even the slightest degree, during the time he remained with the plaintiff. These facts may not be sufficient in themselves to overcome the presumption (see *In re Estate of Squire*, 168 Iowa 597), yet they have probative force, and are entitled to be considered by the jury in determining the ultimate question as to whether or not there was an intention on his part to compensate for the services rendered, and they have some probative force in nega-

tiving the thought that the services were rendered with no intention on his part to compensate his daughter therefor. See *In re Estate of Bishop*, 130 Iowa 250, and cases therein cited.

While it is true, as an abstract proposition, that, when it is shown that a person receiving the services is a member of the family which renders the services, and receives support therein, either as a child, a relative, or a visitor, a presumption arises that such services are gratuitous, still it does not follow, necessarily, that one who, though sustaining the relationship from which otherwise the presumption might arise, comes into the *family* of a child in indigent circumstances, at his own request, receives support, and renders no services, because he is at all times wholly incapable of rendering reciprocal services, and who is capable of maintaining himself and supplying his wants, enters the family with no intention to make compensation.

There is no dispute in this record that this claimant always intended to, and, in the presence of deceased and his guardian and others, said, that she expected to be remunerated for the services to be rendered. While we say that the presumption is that the services were gratuitous, when the family relationship is shown, and while we must concede that the mere fact that the father was incapable of rendering reciprocal services does not make substantive proof that he intended to pay for the services rendered him, yet, when considered in connection with all the facts, and the further fact that he had several other children, financially able to aid in his care, residing in the same neighborhood, and when we consider that the old man had means with which to provide himself with a home and care, and when we consider that this complainant was a married woman, residing with her husband, and having a family of her own, and in indigent circumstances, and, under the circumstances, under no legal obligation to support him, her hus-

band but a laboring man, with little to supply even the needs of his own family, and when we find plaintiff declaring, in the presence of the deceased and his guardian, that she intended to charge and receive compensation for the services rendered her father, and when we find that neither he nor the guardian made any objection to the rendering of the services thereafter, and with knowledge of her intent and purpose, but rather concurred in her demand (though not to the extent of her demand), and when we find the father, who, if we take the testimony of defendant's witnesses, was perfectly capable of understanding his relationship to the subject-matter of the controversy, and the extent to which he was involved, making no objection to her statements, but remaining thereafter with her, and receiving the care from her which he did receive, we think that a case was made for the jury, sufficiently strong, under the rules, to negative the presumption that the services were accepted by him as a gratuity, and to establish, as an affirmative fact, that it was in the mind of the deceased, at the time he was receiving the services, that, at some time, he would make compensation therefor. We think the whole record is pregnant with suggestion—assuming, of course, that the old man had the degree of intelligence which the defendant's witnesses ascribe to him—that he intended at all times to pay, and, by accepting the services after hearing the declaration of his daughter, touching her intent to charge and receive payment out of his estate, so that she might have compensation for the services rendered, impliedly agreed to pay. There is no question of the plaintiff's intent to charge. If this case should fail at all, it must be upon a failure to show that there was an intent on the part of the deceased to make compensation; and in this we think it has not failed. It is only a presumption that the services are rendered gratuitously, when rendered by one member of a family to another, but not a conclusive presump-

tion. It is a presumption that may be negatived, as well by circumstantial evidence as by direct; and, when this presumption is negatived, the general rule applies: to wit, that, where one renders services to another, with his knowledge, the law implies a promise to pay. See *Feltes v. Tobin*, 187 Iowa 11, and cases therein cited; also, *Heffron v. Brown*, 155 Ill. 322 (40 N. E. 583).

Some question is made as to the instructions of the court, in that the court said to the jury:

"If you fail to find from the evidence that there was an implied contract between the claimant and William Nixon, deceased, *or his guardian*, under which said services, care, and board were furnished to the said Nixon, you should find for the defendant."

2. GUARDIAN AND WARD: necessaries for ward: consent to furnishing.

And again, in another instruction the court said that it would be necessary for the claimant to show, by a preponderance of the evidence, that there was an intention upon the part of the claimant to charge for the services, and it must also be shown that there was an intention upon the part of the deceased, *or upon the part of his guardian*, to pay for the services, care, and board, before the plaintiff would be entitled to recover. It is claimed that the inference from these instructions is that, if it were shown that the guardian *knew* these services were being rendered to his ward, and intended that she should be compensated from the estate of which he was guardian, it would be sufficient to negative the presumption that they were rendered and accepted as a gratuity. Now, the general rule is that, when necessities are supplied to a person who, by reason of his disability, cannot himself make a contract, the law implies an obligation on the part of such person to pay for such necessities out of his own property. Every person, whether of sound or unsound mind, can be made liable under an implied contract, for necessaries suit-

able to his state and condition of life. See *In re Estate of Squire,* supra.

The record does not affirmatively show whether this guardian referred to in the record was a guardian of the person or of the property of the deceased. We assume, however, that he was the guardian of both; for, in his report, he says to the court: "My ward is now being cared for by his daughter, Anna Snyder, in the town of Granger, Iowa." This report was made on March 11, 1915. It was the duty of the guardian—assuming that he was guardian of the property and person of the deceased—to see that the old man was provided with the necessaries of life. He knew that another was providing these things, which, under the law, he was bound to provide. While he could not make a bargain binding the estate as to the extent of its liabilities for the necessaries furnished, he could consent to the supplying of the necessaries, and to the payment of reasonable compensation therefor, even without the order of the court. This right and this duty inhered in the very appointment of the defendant as guardian. Assume, for the purposes of argument, that the guardian had placed this old man in the hands of this girl for care. Assume that, when he placed him there, he knew that she intended to charge for the services which she rendered. He represented the old man, and had authority, under the law, to act for him. From this very act might be inferred an intention to pay for the services, and this very act might negative the thought that the services were to be rendered gratuitously. The guardian reported to the court the very fact, and made known to the court the fact that this daughter, who is now claiming for services, was rendering the very services for which she now seeks to recover. With knowledge of the fact that she was intending to charge, he permitted him to remain there. She is asking compensation only for those things which are necessary to the old man's comfort and

well-being, supplied with the knowledge and consent of the guardian. It is doing no violence to reason or the rule to say that there was an intent on the part of this guardian that the estate of which he was guardian should be bound for the services rendered. A different rule might obtain if these were not necessaries, but the estate of all men, sane or insane, whether capable of making a contract or not, is bound for necessaries furnished. This is the rule in the case of minors, as well as adults.

It appears that, after the trial had been begun, the thought entered the mind of counsel that the plaintiff, being a married woman could not recover for the services rendered in the household. Thereupon, an amendment was filed, showing an assignment from the husband of all his rights in the claim urged against the estate. It is thought that she, as assignee, could not recover on this claim, without showing that it was the intention of her husband to charge for the services rendered. We think, however, that, where the services were rendered by the wife, with the knowledge and consent of the husband, with a purpose on her part to receive compensation, and that purpose was communicated to the deceased and his guardian, and she is claiming for the services rendered, she may recover without an assignment. There is no evidence, except inferentially, that the husband did or furnished any of the things for which suit was brought. The services rendered were her own, and they were not such services as she owed to her husband, or such services as her husband had a right, as such, to exact from her. We think this is governed by what was said in *Tucker v. Anderson*, 172 Iowa 277.

On the whole record, we find no ground for reversal, and the judgment is, therefore,—*Affirmed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.

> 3. HUSBAND AND WIFE: claims arising out of wife's separate business: care of parent.