Argued September 23; reversed November 25, 1941

In re Herdman's Estate

SIGMAN *v.* HERDMAN

(119 P. (2d) 277)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*Fred W. Brown* and *William G. Dunlap,* both of Portland, for appellant.

*D. P. Price,* of Portland (Joe P. Price, of Portland, on the brief), for respondent.

LUSK, J. This is an appeal from a judgment of the circuit court, department of probate, rejecting the claim of Elizabeth M. Sigman for the reasonable value of services as a housekeeper against the estate of Fred M. Herdman, deceased.

The decedent was a resident of Portland. The plaintiff, Mrs. Sigman, was his sister. On June 15, 1933, the decedent's wife died suddenly, and, in response to his request by telegram, Mrs. Sigman came to Portland from her home in Los Angeles and thereafter until October, 1938, when Herdman remarried, served him as his housekeeper. She testified that her brother many times promised to pay her for these services. J. A. Herdman, brother of the deceased, who lived with him during the period in question, corroborated the claimant both as to the nature and extent of the services rendered and the decedent's promise to compensate for them. There was also expert testimony tending to show the reasonable value of the services.

At the conclusion of the plaintiff's case the defendant moved for a judgment of involuntary nonsuit. The court thereupon rendered an oral decision indicating disbelief in the claimant's testimony, and subsequently entered an order which did not in terms allow the

defendant's motion but recited "that claimant failed to prove her claim against said estate by sufficient evidence" and ordered that the claim "be and the same is hereby rejected".

■ This proceeding is in the nature of an action at law. *Turner v. Schlegel*, 163 Or. 367, 97 P. (2d) 723. A motion for a nonsuit admits not only all that the evidence proves but all that it tends to prove. The evidence given for the plaintiff must be taken to be true, together with every inference of fact which the jury might legally draw from it. *Lamm v. Silver Falls Timber Co.*, 133 Or. 468, 523, 277 P. 91, 286 P. 527, 291 P. 375; *Farrin v. State Industrial Accident Commission*, 104 Or. 452, 461, 205 P. 984; *Herrick v. Barzee*, 96 Or. 357, 371, 190 P. 141; *Brown v. Oregon Lumber Co.*, 24 Or. 315, 317, 33 P. 557. The rule is no different when the trial is before the court without a jury. 64 C. J. Trial 1213, § 1028. Hence, while a trier of the facts might reasonably say, as the court did, that it is not probable that one having a claim for money against another would wait until after the alleged debtor's death before asserting the claim, it was not the function of the court to weigh the evidence at that stage of the case, but to pass on the motion for nonsuit in the light of the rules which have been stated. Therefore, we treat the court's order as a judgment of involuntary nonsuit and as such determine whether or not it was erroneous.

■ The corroborating evidence, in our opinion, was clearly sufficient to satisfy the requirements of 2 O. C. L. A. § 19-704. The defendant's attack on that evidence is aimed solely at its weight, not its legal sufficiency to withstand a motion for nonsuit.

■ The defendant contends that it must be held as a matter of law that the executor properly rejected the

claim because it shows on its face the relationship of brother and sister between the decedent and the plaintiff and does not allege an express contract but only facts from which a promise to compensate for the services might be inferred. Defendant cites *Wilkes v. Cornelius*, 21 Or. 348, 28 P. 135. That case holds that a claim for valuable services, asserted by a son against the estate of his deceased parent and based on an implied promise, was properly rejected by the executor, since it would be presumed that owing to the relationship between parent and child the services were rendered gratuitously. The claim, therefore, did not show a subsisting liability, and the claimant would not be permitted to supply the defect by evidence on the hearing. We think that the doctrine of that case should not be extended to more remote relationships and that as between brother and sister no presumption unfavorable to the claim will be entertained unless it appears that at the time that the services were rendered the claimant was living as a member of the family of the other party. 24 R. C. L. Work and Labor 683, §-17; *Key v. Harris*, 116 Tenn. 161, 92 S. W. 235, 8 Ann. Cas. 200, with note at p. 203; *Mark v. Boardman*, 28 Ky. L. Rep. 455, 89 S. W. 481, 1 L. R. A. (N. S.) 819 (note); *Hodge v. Hodge*, 47 Wash. 196, 91 P. 764, 11 L. R. A. (N. S.) 873, 881, 883 (note); *Disbrow v. Durand*, 54 N. J. L. 343, 24 Atl. 545, 33 Am. St. Rep. 678; *Gerz v. Demarra*, 162 Pa. St. 530, 29 Atl. 761, 42 Am. St. Rep. 842; *Shubart's Estate*, 154 Pa. St. 230, 26 Atl. 202.

*Ingram v. Basye*, 67 Or. 257, 135 P. 883, did not involve the relationship of brother and sister, but, nevertheless, furnishes an application of the principle. The plaintiff was the foster daughter of the defendants, living at their home. In view of the nature of the work

she was called on to do and the harsh treatment she received at the hands of her foster parents and other circumstances, the court held that the question whether ''the family relationship did exist in its true sense between plaintiff and defendants'', was one of fact, and that the trial court erred in directing a verdict for the defendants. See, also, *Sargent v. Foland*, 104 Or. 296, 307, 207 P. 349; *Gilbert v. Branchflower*, 114 Or. 508, 519, 231 P. 982.

In the instant case the claim does not show that plaintiff lived with her brother as a member of his family, and *Wilkes v. Cornelius*, therefore, does not govern. *Sargent v. Foland* (op. cit. 307).

Nor does the evidence leave the plaintiff's status in her deceased brother's household unambiguous. She had not lived with him before the death of his wife, but came from Los Angeles to Portland at his request and did all the work of a housekeeper, including labor of a menial character, in a twelve-room house in which another brother lived and paid board to the decedent. There were many visitors who stayed for meals, and friends of the decedent would visit in his home for two to six weeks at a time. The circumstances under which the claimant lived in Los Angeles, except that she made her home with her daughter, are not disclosed. The only evidence tending to show in the slightest degree the affection and kindness of a brother towards his sister is the plaintiff's testimony that decedent, over the period of five years that she lived in his home, bought her a hat that cost $1.95, a pair of cheap shoes, two dresses costing $6 and $7.50 respectively, and a winter coat which cost $19.50. He also once gave her $5 as a birthday present, and when she left for Los Angeles gave her $20 and a ticket on the train. On the

other hand, the plaintiff testified in answer to the question when and why she left her brother's home: ·

"I left my brother's home on October 6th, 1938, to return to my daughter, with whom I preferred to live in Los Angeles. I left because Mr. Fred Herdman had married a Miss Agnes Campbell, and didn't need me any longer. I didn't know he was going with any one, or going to get married until he returned to his home saying, 'I married Agnes Campbell.' He told me none of his social and financial plans with outside people. I was just the servant in Mr. Fred Herdman's home."

■ From such testimony as the record contains it would not be unreasonable to infer that the claimant's position was, as she said, that of a servant rather than a member of the family. We indicate no opinion of our own as to the fact, but hold simply that on the record before us it is not shown as matter of law that she lived in her brother's house as a member of the family. That, we think, is a question of fact and not of law.

■ We are of the opinion, moreover, that it was competent for the plaintiff to show an express understanding or agreement that she was to be compensated for her services, notwithstanding the claim is based on an implied promise, on the principle that any testimony is competent which "warrants the inference that the services were rendered by the claimant with an intention of charging for them and a justifiable expectation of payment, and that they were accepted by the other party with a knowledge, actual or constructive, of this expectation". 28 R. C. L. Work and Labor 687, § 23; *Franklin v. Northrup*, 107 Or. 537, 551, 215 P. 494; *Sargent v. Foland*, supra; *O'Connor v. Beckwith*, 41 Mich. 657, 3 N. W. 166.

We have examined the authorities cited in defendant's brief, but, as they are not inconsistent with the principles of law here stated and in many instances merely illustrate the application of those principles to varying states of fact, we think no useful purpose will be served by specific reference to them.

■ It may be added that plaintiff's failure to assert her claim until after her brother's death weighs heavily against her; but it is not conclusive, and is but an element, important it is true, to be considered, along with the other facts in evidence, in determining the ultimate question whether the services in question were rendered gratuitously or with the expectation on both sides that they were to be rewarded.

■ Since the plaintiff made out a case sufficient to be submitted to a jury, it follows that the court below erred in not denying the motion for a nonsuit; and the judgment appealed from is, therefore, reversed and the cause remanded for further proceedings.