Argued June 13; modified July 1; rehearing denied
September 12, 1944

IN RE MCKINNEY'S ESTATE
TRACY *v.* PIONEER TRUST CO.
(149 P. (2d) 980, 151 P. (2d) 459)

Before BAILEY, Chief Justice, and BELT, KELLY, LUSK and HAY, Associate Justices.

*W. C. Winslow,* of Salem, for appellant and cross-respondent.

*George A. Rhoten,* of Salem (Rhoten & Rhoten, of Salem, and Sam F. Speerstra, of Salem, on the brief), for respondent and cross-appellant.

BAILEY, C. J.   On February 10, 1934, Miss Ann Eliza McKinney died intestate, leaving surviving her as her only heirs at law four sisters, two brothers and the children of deceased sisters.   Her estate was appraised at $6,129.00.   In the administration thereof the claim of her sister, Alice N. Tracy, in the sum of $3,000.00 for services rendered and maintenance furnished by Mrs. Tracy to Miss McKinney from July 1, 1930, until Miss McKinney's death, was presented to and allowed by the county court.   The other heirs of the decedent appealed to the circuit court from the judgment allowing that claim.   Before the appeal was heard in the latter court Mrs. Tracy died, and her son, Comyn C. Tracy, succeeded to her interest in the claim.

The cause was heard before a jury in the circuit court.   A transcript of the testimony of Alice N. Tracy taken in the county court was read to the jury and became a part of the record on this appeal.   The hearing resulted in a verdict in favor of Comyn C. Tracy for the full amount of the claim, without interest.   From the judgment thereon Pioneer Trust Company, administrator *de bonis non* of Miss McKinney's estate, has appealed, and Comyn C. Tracy has cross-appealed.

Upon the death of her father Ann Eliza McKinney became the owner of what is referred to in the record as the home place, a farm of about thirty-four acres near Turner, Oregon.   She continued to live thereon with her mother until the death of the latter in 1921. Miss McKinney thereafter made her home with one

of her sisters, Mrs. Frances O. Ball, until the end of June, 1930.

In the fall of 1928 she leased the home place to Alice N. Tracy and her husband for a period of five years at a cash rental of two hundred dollars a year, and reserved part of the house thereon for her own use in the event that she should return to her farm. Mr. and Mrs. Tracy, however, did not then occupy the house, but continued to live in their own home.

Miss McKinney returned to the home place about July 1, 1930, and remained there until her death. In explaining why her sister returned to her own home, Mrs. Tracy gave the following testimony:

"Q. I see. Now you say you took her to the home place, that is, to her place. How did you come to do that?

"A. She was ailing, and Mr. and Mrs. Ball were ailing, both of them, and Cordell Ball [a son of Mrs. Frances O. Ball] came to my place and said they wasn't able to take care of Ann any longer, she would have to go somewhere else.

"Q. Did you, following that conversation with Cordell, have a talk with your sister?

"A. I did.

"Q. What, if any, arrangement was made between you and your sister at that time?

"A. I went up and told her the circumstances and she said, 'Well, where will I go?' I said, 'Couldn't you go to your home?' And she said she couldn't go alone, and she said, 'Can you go with me?' I said, 'Well, I will see.' That was the conversation that happened."

Mrs. Tracy consented to the arrangement suggested by Miss McKinney, and with her husband moved into the house on the home place, to take care

of her sister. Their son, however, remained in their own home, living alone until his marriage. After her husband died in 1932, Mrs. Tracy continued to operate the farm, hiring necessary help. On the expiration of the five-years' lease of the farm, in the summer or fall of 1933, a new lease thereof was made, on a crop rental basis.

For several months after she returned to her home Miss McKinney was able to be up and about, but could do very little, if any, work about the place. When she was able to sit up she ate her meals with Mr. and Mrs. Tracy. During the last three years of her life she was in very feeble health and suffered two paralytic strokes. After her second stroke, which occurred in July 1933, until her death, Miss McKinney was almost helpless and Mrs. Tracy had to take care of her room, feed her and at night sleep in her room. All food, supplies and fuel used at the home place were furnished by Mr. and Mrs. Tracy until the death of the former, and thereafter by Mrs. Tracy alone. Miss McKinney contributed nothing toward the expenses of the household.

Mrs. Tracy testified that when she was visiting Miss McKinney at the Ball home in May, 1929, Miss McKinney asked her if she wanted the home place, and she answered that "it wouldn't be a bad proposition", whereupon Miss McKinney said, "I will give it to you." No discussion was ever had thereafter about Miss McKinney's giving the farm to Mrs. Tracy. When she left her own home to take care of her sister, Mrs. Tracy expected, she testified, to be compensated for her services by receiving the home place. In addition to that realty Miss McKinney owned other property, including a farm of about one hundred seventy-five

acres. Neither before nor during the time that Mrs. Tracy was taking care of her sister and providing for her, was anything ever said by either of them about compensation therefor to Mrs. Tracy. Nevertheless she certainly expected to be compensated for her services, Mrs. Tracy testified.

The administrator *de bonis non* assigns as error the refusal of the court to give to the jury the following requested instruction: "You are instructed that where one near relative renders services of a personal character to another near relative, where they live in the same household, the law presumes that the services were rendered gratuitously." It also excepted to the giving of the following instruction: "If you should find there was no express agreement to pay for the services, the law presumes an agreement to pay the reasonable value of the services." These two assignments will be considered together.

It was held in *Wilkes v. Cornelius,* 21 Or. 348, 28 P. 135, that when valuable services are rendered by a child to his parent there is a presumption, because of the existing relationship, that the services are rendered gratuitously, and that such presumption can be overcome only by an express agreement or understanding between the parties. In commenting on the ruling in that case this court in *Sigman v. Herdman,* 167 Or. 527, 119 P. (2d) 277, observed:

"... We think that the doctrine of that case should not be extended to more remote relationships and that as between brother and sister no presumption unfavorable to the claim will be entertained unless it appears that at the time that the services were rendered the claimant was living as a member of the family of the other party": citing authorities.

In *Mark's Adm'r v. Boardman,* 28 Ky. Law Rep. 455, 89 S. W. 481, 1 L. R. A. (N. S.) 819, cited in *Sigman v. Herdman,* supra, the decedent, a bachelor, left his home on October 17, 1900, and lived with his sister until his death on August 9, 1901. The court upheld the sister's claim for nursing and other menial labor performed for her brother. The opinion therein distinguished the case then at bar from those relied on by the administrator, in the following language:

". . . It will be observed in all, or nearly all, of these cases that the parties received a direct benefit or advantage in being or residing together, and in most of them the parties making the charge resided in the household of the persons whose estate was sought to be charged. Most all cases denying recompense, under such circumstances, are those where there has been a mutuality of benefit. In the case at bar there was no mutuality of benefit. The benefit was all upon the side of H. R. Mark, the deceased."

It is pointed out in 28 R. C. L., Work and Labor, § 17, at page 683, that no presumption unfavorable to the claim of a relative more remote than that of parent and child will be entertained "unless it appears that at the time the services were rendered the claimant was living as a member of the family of the other party."

While taking care of her sister, Mrs. Tracy was not "living as a member of the family" of Miss McKinney. She lived in quarters for which she was paying rent and in which she maintained her own home. She received no benefit or advantage from having Miss McKinney reside in the same house with her. The benefit was not mutual, but all "upon the side of" Miss McKinney.

At the time that the arrangement was made between Mrs. Tracy and Miss McKinney that both should move into the house on the home place, they were living separately and apart. Mrs. Tracy had her home with her husband and son, and her removal to the house on the farm rented by her and her husband was not for the purpose of gaining any benefit, but to take care of her sister, who was then seventy-eight years old, in poor health and needing constant attention. Mrs. Tracy was under no duty of supporting her sister. Moreover, the latter had ample means to employ the necessary help.

This court in the case of *Estate of McLain*, 126 Or. 456, 270 P. 534, had before it for consideration the claim of an aunt against the estate of her niece, deceased, for services performed during the time that the claimant was living with the niece in a home maintained by the latter. The niece, who was in poor health, requested the aunt to come and live with her and help with the work. In regard to the existence of any presumption that compensation for the services was not intended, the court said:

". . . Since this arrangement was made before she became a member of decedent's family, there is no presumption that such services were intended to be gratuitous. The rule in respect thereto is stated in 3 Page on Contracts, section 1454, as follows:

" 'If persons who are related are not members of the same family when they enter into an arrangement under which one of them is to render services to the other and if as a result of such arrangement they live together as members of the same family and render services one to the other, there is no presumption that such services are intended to be gratuitous.' "

■ In view of the fact that the arrangement for Mrs. Tracy to render services and furnish maintenance to her sister was entered into at a time when they were not living together as members of the same family, and the further fact that Mrs. Tracy was not a member of the decedent's household at the time the services were rendered and the maintenance furnished, no presumption arises that they were rendered and furnished gratuitously. No error, therefore, was committed by the trial court in refusing to give the instruction requested by the administrator *de bonis non*, hereinabove quoted.

■ The excerpt from the instruction in regard to agreement to pay for the services also quoted above, to which the administrator excepted, should be considered in connection with the remainder of the instruction on that subject. In its entirety the instruction read as follows:

"If you should find there was no express agreement to pay for the services, the law presumes an agreement to pay the reasonable value of the services. This is a presumption which comes from the mere acquiescence in the rendition of the services. The reasonable value of the services rendered, if you find they were rendered, would be what was the reasonable price paid for such service or like service at the time in question in the community where such services or like services were rendered. If you find that the services rendered by Alice Tracy to Ann Eliza McKinney were voluntarily rendered, then in that case I instruct you that plaintiff can not recover in this case and your verdict must be for the defendant.

"If you find from the evidence that during the time the services were being rendered, plaintiff's decedent, Alice Tracy, had no real, *bona fide* expectation of being compensated for the services

she was rendering for the care of Ann McKinney, then she can not now change her mind and recover compensation for the services so rendered, and your verdict should be for the defendant."

In our opinion, the foregoing instruction is a correct statement of the law: *Estate of McLain,* supra; *Sigman v. Herdman,* supra; *Sargent v. Foland,* 104 Or. 296, 207 P. 349.

The only remaining assignment of error in the appellant's brief that requires notice is based on the denial of the administrator's motion for a new trial. One of the grounds stated for requesting a new trial was that: "The evidence affirmatively shows that there was an offset against the claim which should have been deducted from the amount of said claim."

The claim of Alice N. Tracy is for services rendered by the claimant "in board, laundry, care and nursing of the said Ann Eliza McKinney from the first day of July, 1930, until her death on the tenth day of February, 1934." After stating the nature of the services rendered, the claim thus concludes:

"That the reasonable value of the board and laundry and my said services during the said period is reckoned upon a basis of $3.00 per day, which would total the sum of $3,960.00, but I am willing to accept in satisfaction of my said services the sum of $3,000.00.

"That the said claim of $3,000.00 is a true and correct statement of such claim and the sum that is given therein is justly due to myself as such claimant from said estate.

"That no payments have been made thereon and that there is no just counterclaim to the same, to my knowledge."

■ In the trial of the case before the county court Mrs. Tracy admitted that she was owing Miss Mc-

Kinney at the time of the latter's death $200.00 as rental. She asserted, however, that in preparing her claim against the estate she had taken into account that indebtedness, by reducing the reasonable value of her services from $3,960.00 to $3,000.00. What she might have had in mind at that time is of little importance. Her claim was for $3,000.00 for her services, and not for $3,000.00 plus the amount owed by her to the decedent. She was bound by her claim as presented to the court: *Wilkes v. Cornelius,* supra; *In re Andersen's Estate,* 101 Or. 94, 188 P. 164, 198 P. 236; *In re Estate of Banzer,* 106 Or. 654, 213 P. 406; *In re Stout's Estate,* 151 Or. 411, 50 P. (2d) 768, 101 A. L. R. 672.

██ Inasmuch as Mrs. Tracy admitted that she was indebted to the estate of the decedent in the sum of $200.00, the jury should have allowed that amount as a set-off against her claim. By virtue of § 3 of article VII of the constitution, however, it is not necessary for us to remand the cause for a new trial in order to correct the judgment in that respect: *Richardson v. Investment Co.,* 124 Or. 569, 264 P. 458, 265 P. 1117. The sum of $200.00, therefore, will be deducted from the amount awarded by the jury.

In his cross-appeal Comyn C. Tracy assigns as error the refusal of the circuit court to allow interest on his claim. At the conclusion of the testimony he requested the court to instruct the jury that "interest should be allowed the claimant on whatever amount the jury should find to be a reasonable value" of the services; and that it was not necessary for the jury to compute the amount of interest, as it would be sufficient to add after the amount found due for services the following: "together with interest thereon

at the rate of six per cent per annum from February tenth, 1934''. When the court had completed its charge to the jury, Tracy excepted to its failure to include therein an instruction in regard to the allowance of interest. In excepting, counsel for the cross-appellant stated, among other things: ''It is the claim of claimant that interest should be allowed from the date of the death of Ann Eliza McKinney, and in any event, not later than from the time this claim was allowed by the county court.''

The claimant relies on that part of § 66-101, O. C. L. A., reading as follows:

''The rate of interest in this state shall be six per centum per annum and no more, and shall be payable in the following cases, to wit:

''(1) On all moneys after the same becomes due; provided, that open accounts shall bear interest from the date of the last item thereof.

''(2) On judgments and decrees for the payment of money from the date of the entry thereof unless some other date is specified in said judgment or decree.''

■ Inasmuch as the claimant's demand is based on an implied promise to pay the reasonable value of services, there was no understanding between the claimant and the decedent as to the value of the services. Nor was there any agreement as to when compensation therefor should be paid. No demand was ever made upon the decedent for payment. The services performed were of such a nature that their value was not ascertainable by computation or by reference to well-known standards of value. The amount, character and value of the services could only be established by evidence. Mrs. Tracy, who performed the services, was appointed administratrix of the decedent's estate,

and it was therefore necessary for her to present her claim direct to the probate court for allowance. It was subject to any just set-off or counterclaim.

Until the amount of the claim was established by the judgment of the circuit court no interest thereon was allowable: *Gearhart v. Hyde,* 39 S. D. 273, 164 N. W. 58; *Swinnerton v. Argonaut Land & Development Co.,* 112 Cal. 375, 44 P. 719; 33 C. J., Interest, § 72, page 311.

We do not consider the ruling in *Public Market Company v. City of Portland,* 171 Or. 522, 621, 130 P. (2d) 624, 138 P. (2d) 916, as to the allowance of interest, controlling here, because it is based on an entirely different state of facts.

■ Upon appeal to the circuit court from a judgment of the county court allowing or disallowing a claim against an estate, the trial in the circuit court is *de novo,* and the case is there tried in the same manner as though the action had originally been begun in that court: § 10-813, subdivision 3, O. C. L. A.; *In re Mannix Estate,* 146 Or. 187, 29 P. (2d) 364. When the appeal is taken to the circuit court the judgment of the county court is vacated: 4 C. J. S., Appeal and Error, § 611, page 1096. It follows, therefore, that the only judgment on which interest could be allowed under § 66-101, subdivision 2, O. C. L. A., is that entered in the circuit court.

The judgment appealed from is modified by deducting from the $3,000.00 awarded the claimant the $200.00 owed by Mrs. Tracy to the estate of the decedent; and as so modified it is affirmed. The claimant is entitled to interest thereon at the rate of six per cent per annum from the date of the entry of the judgment in the circuit court. Neither party will recover costs in this court.

Petition for rehearing denied September 12, 1944
ON PETITION FOR REHEARING
(151 P. (2d) 459)

BAILEY, C. J., on petition for rehearing. The appellant, Pioneer Trust Company, in its original brief on appeal assigned as error the failure of the court to give the following requested instruction:

> "If you find from the evidence in this case that the services rendered by Alice Tracy were rendered under the hope and expectation that she would receive, at the death of Ann McKinney, what has been referred to herein as the home place, and if said hope was not based upon any promise or agreement upon the part of Ann McKinney that she would give her said place for the rendition of said services, then and in that case you are instructed that the said Alice Tracy, the original claimant herein, could not thereafter change her mind and charge for the services so rendered after she ascertained that her hopes had not borne fruit or been rewarded by Ann McKinney's leaving her the home place."

■ In our former opinion we did not refer specifically to that assignment of error, for the reason that we regarded it as without merit. The appellant now urgently requests that we specially pass upon it.

The only citation in its brief in support of its contention is "71 C. J. 44 and cases cited in note 78". We assume, in view of the reference to "cases cited in note 78" and from the general tone of the argument, that the appellant has in mind § 8 of the text (71 C. J. 44), reading in part as follows:

> "When one renders services to another, in the hope or expectation of a legacy, devise, or other provision by will for his benefit, without any contract, express or implied, but relying solely upon the generosity of the person for whom such services

were rendered, he can not recover for such services, because of the failure of such person to make such testamentary provision in his behalf. But it has been held that, although no right of action arises because of disappointment in not receiving a legacy for services rendered in expectation thereof, the court will allow a reasonable compensation for the services, if satisfied that it is equitable to do so under the circumstances; and, although services were performed in expectation of a beneficial provision by will, that will not prevent a recovery, if there was an express agreement to pay therefor or circumstances from which one would be implied by law.''

There are eighteen cases cited in note 78 with reference to the text quoted, but our attention has not been directed to any particular one. The general principle of law enunciated in such of those cases as involve the matter, is that, ''If the services were rendered merely in expectation of a legacy, without any contract, express or implied, but relying solely on the testator's generosity, no action can be maintained'': *Martin v. Wright's Administrators,* 13 Wend. 460 (N. Y.), 28 Am. Dec. 468; *Taylor v. Wood,* 72 Tenn. 504; *Kennard v. Hobson's Executors,* 6 Del. 36; *Shakespeare v. Markham,* 10 Hun 311; *Davison v. Davison,* 13 N. J. Eq. 246. See also: *Case of Joseph Walker's Estate,* 3 Rawle (Pa.) 243; *Jincey v. Winfield's Administrator,* 50 Va. 708; and *Messier v. Messier,* 34 R. I. 233, 82 A. 996.

As above quoted from 71 C. J. 44 and the supporting authorities, the rule is restricted to instances in which there is no contract, either express or implied, for payment for the services, and in which the one rendering the services relies solely upon the generosity of the testator. The requested instruction does not include the condition that the services must have been

rendered "merely in expectation of a legacy, without any contract, express or implied", and that in rendering them Alice N. Tracy must have relied solely upon the generosity of the decedent, Ann McKinney, to provide payment therefor in her will.

We held in our previous opinion that there was no presumption that the services rendered and maintenance furnished by Mrs. Tracy were gratuitous, and further ruled that there was sufficient evidence from which the jury could have found that there was an implied contract on the part of the decedent to pay for such services and maintenance. The question of whether the services were performed voluntarily or without any expectation of Mrs. Tracy to be compensated therefor was submitted to the jury under the instruction quoted in our former opinion.

The instruction requested was too broad in scope, and the circuit court did not err in refusing to give it. The petition for rehearing is denied.