Argued September 15; affirmed October 5, 1948

# IBACH *v.* HOFFMAN
198 P. (2d) 266

*Francis E. Sturgis,* of Hillsboro, argued the cause for respondent. With him on the brief were W. G. Hare and James E. Burdett, of Hillsboro.

*Harry G. Hoy,* of Portland, argued the cause for appellants. On the brief were Hoy & Prag, of Portland.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Brand and Hay, Justices.

LUSK, J.

The question for decision on this appeal is whether the plaintiff Mary E. Ibach is liable as a matter of law to the defendants Harry Hoffman and Ida Hoffman,

plaintiff's son-in-law and daughter, for the reasonable value of board and lodging furnished to the plaintiff by the defendants in the home of the latter.

The action was commenced by Mrs. Ibach to recover from the defendants the sum of $1,670.00 which she alleged was the balance of the sum of $1,770.00 delivered to the defendants by her between July, 1941, and September 8, 1944, to be held for her in trust, and of which the sum of $100.00 had been returned to her. The defendants alleged in their amended answer that the said sum of $1,770.00 "was so delivered by plaintiff to the defendants as payment for services performed and to be performed for the plaintiff by the defendants consisting of the furnishing of board and lodging and the like", and that "the defendants furnished board and lodging to the plaintiff from February, 1942, to September, 1945, a period of more than forty-two (42) months of the reasonable value of $1260.00 and delivered to and for, or on behalf of the plaintiff the further sum of $600.00 in cash." They further alleged that "said board and lodging were so furnished pursuant to an understanding that the plaintiff was to pay the reasonable value therefor." Plaintiff's reply admitted that such board and lodging were furnished to her, and admitted the repayment to her of $600.00 of the money in question, but otherwise denied the allegations of the answer.

The trial was before a jury, but at the conclusion of the taking of testimony both sides moved for a directed verdict, and the cause was thereupon submitted to the court for decision. Thereafter the court filed a written opinion and entered judgment for the plaintiff for the sum of $1,170.00. From this judgment defendants have appealed.

■ It is contended first by the defendants that the reply does not state a defense to the new matter in the answer because it does not allege the relationship existing between the parties. The answer to this contention is that the plaintiff in her reply denied any agreement to pay for the services alleged, and this denial sufficed to let in proof of any facts, including the fact of the relationship between the parties, which negatived the existence of such an agreement, whether express or implied.

■ The following facts are disclosed by a somewhat meager record. The defendants' home was apparently on a small farm in Washington County, which they owned as tenants by the entirety. They had a "big family" to support according to defendant Hoffman. He worked at the aluminum plant in Troutdale near Portland in 1941, and thereafter for forty-two months in the shipyards. These were war years, and the court will take judicial notice of the high wages paid in these industries during that period. Mrs. Hoffman had received an inheritance—small no doubt—which she used to pay debts against the farm. She worked in the field when she could. The general picture is that of a family of small means.

There is no evidence that Mrs. Ibach had any money in addition to that in dispute. It may be inferred that she was advanced in years, although her age is not disclosed.

■ It is not shown whether Mrs. Ibach went to live with the defendants at their invitation or at her own suggestion. Apparently she had other relatives, for the defendants offered to prove that she had lived with them "and always gave them money and helped them". This proffered evidence was rejected by the court. It

would seem to us to be relevant on the question of what was the expectation of the parties with regard to compensation; but the court's ruling thereon is not assigned as error in the appellants' brief and cannot be considered by us. Rules of the Supreme Court, Rule 2, 9 O. C. L. A., p. 317.

When Mrs. Ibach went to live with the defendants, according to Mrs. Hoffman, "we just gave her the house and bed room; we moved out to the little log cabin." The Hoffman family and Mrs. Ibach seem to have taken their meals together, and Hoffman testified that a good deal of the money turned over to the defendants by the plaintiff was spent for her groceries and necessaries of life. The plaintiff, Mrs. Hoffman testified, was not able to assist in the housework, although she washed the dishes a couple of times.

There was conflicting evidence as to the circumstances under which Mrs. Ibach turned over the sum of $1,770.00 to the defendants. It was not delivered all at once, but at different times in varying amounts. Mrs. Ibach testified that there was no understanding that she was to pay for her room and board, and that the understanding with respect to the money was that her daughter "was to put it in the lock-box in the bank and save it for me." The evidence on behalf of the defendants is to the effect that Mrs. Ibach told them, "We could go ahead and use it for what we wanted—it would be ours sometime anyway".

The defendants were permitted to testify that they expected to be compensated. Hoffman swore:

> "I certainly did expect some from the way she handed over that money, I thought her intention was—I thought it was a little towards her support, as I was pretty hard up at the time and had a big family to support."

A part of the money was spent by the defendants in the purchase of an "extra car", which was used to take the plaintiff to town and back. Hoffman testified that the car was bought at Mrs. Ibach's suggestion, but she denied this and swore they bought it on their own account and that she never told them to use any of the money for that purpose. This car was sold after Mrs. Ibach left, but there was no evidence as to the price paid for it or the selling price.

Mrs. Ibach testified that when she left the defendants' home she asked her daughter for the money and that the latter said "to ask Harry", her husband, who was not at home at the time. Later Mrs. Ibach wrote Hoffman about the money and he sent her $100.00. Then she consulted an attorney, who made written demand upon Hoffman for $1,700.00. "In the meantime", Hoffman testified, "I had put in five hundred dollars in the Washington County Bank to her credit." It is conclusively shown, however, by the bank's records that this deposit was not made "in the meantime", but after Hoffman had written the attorney acknowledging his demand and stating among other things, "If you will send me a statement as to the amount of money she says I have of hers I will be glad to give her what is coming to her after her board and room has been deducted." This letter is dated September 7, 1945, and the deposit was not made until October 19.

It was conceded by Hoffman in his testimony that he did not tell Mrs. Ibach at any time before writing the letter that he was going to charge her for room and board, and Mrs. Hoffman makes no such claim. There is no evidence as to the circumstances under which Mrs. Ibach left the home of the defendants.

■ It is the general rule that where one renders

valuable services to another without an express agreement for compensation the law will imply an agreement on the part of the one receiving the services to pay to the other their reasonable value. To that rule it is a well-established exception that where services consist of the furnishing of board and lodging to a parent by a child they are presumed to have been done gratuitously, and such presumption can only be overcome by clear, direct and positive proof of an understanding or agreement on the part of the parent to pay and of the child to receive compensation therefor. *Wilkes v. Cornelius,* 21 Or. 348, 349, 28 P. 135. It has been said that in the case of parent and child this presumption arises out of the bare fact of the relationship. *Sargent v. Foland,* 104 Or. 296, 308, 207 P. 349. But this is not true of more remote relationships, whether by blood or marriage. As to these latter the presumption arises only where the person rendering the services and the recipient thereof are living together as members of the same household. In such a case the presumption can be overcome only by evidence of an express contract or facts from which an inference can be drawn ''that the services were rendered by the claimant with an intention of charging for them and a justifiable expectation of payment, and that they were received by the other party with a knowledge, actual or constructive, of this expectation.'' *Sigman v. Herdman,* 167 Or. 527, 533, 119 P. (2d) 277. See, to the same effect, *In re McKinney's Estate,* 175 Or. 28, 33, 149 P. (2d) 980, 151 P. (2d) 459; *Sargent v. Foland,* supra.

A family, within the meaning of the principle under discussion, is ''a collective body of persons, who form one household, under one head and one domestic government, and who have reciprocal natural or moral

duties to support and care for each other." *Jones v. Jones,* 146 Md. 19, 25, 125 A. 722, 36 A. L. R. 672.

Upon this subject the New Jersey court says:

"The reason of this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good-will, which tend to the mutual comfort and convenience of the members of the family, and are gratuitously performed * * * ". Disbrow v. Durand, 54 N. J. L. 343, 345, 24 A. 545, 33 Am. St. Rep. 678.

■ The question whether the family relationship exists is, as one of the authorities relied on by the defendants says, "in the last analysis * * * a mixed question of law and fact determinable only by reference to all the circumstances involved." 71 C. J., Work and Labor, 56, § 22. See, idem, 153, § 126. In *Sigman v. Herdman,* supra; *Gilbert v. Branchflower,* 114 Or. 508, 519, 231 P. 982; and *Ingram v. Basye,* 67 Or. 257, 263, 135 P. 883, the question was held to be one of fact. We think that that is true here.

It is argued, however, that the presumption of gratuity may not be invoked in this case because, as is stated in 28 R. C. L., Work and Labor, 688, § 24, an authority cited by the defendants, "inability to make return either in kind or otherwise for services rendered may repel the presumption, for ordinarily there must be reciprocity in services." To the same effect see 71 C. J., Work and Labor, 69, § 29. But this likewise is ordinarily not a question of law, as is illustrated by *Soderland v. Graeber,* 190 Ia. 765, 180 N. W. 745, a case cited by the defendants which involved a claim for services rendered by a son to his mother. The trial court had directed a verdict of dismissal of the claim.

On appeal the judgment was reversed because the court was of the opinion that, in view of the evidence as to the helpless condition of the mother and other circumstances, a jury question was presented as to whether she did not intend and expect to make compensation to her son for the services rendered. The implication of gratuity was not held to have been rebutted as a matter of law.

■ We think that the true rule was stated by the Supreme Court of Iowa in the well-considered case of *Snyder v. Nixon*, 188 Ia. 779, 176 N. W. 808, an action by a daughter against the estate of her deceased father. The decision turned upon the existence of the family relationship. The court said (188 Ia. 782):

> "It does not appear that deceased did any work, or that any work was exacted of him. There were no reciprocal services exacted or rendered, nor was he capable of rendering reciprocal services, in even the slightest degree, during the time he remained with the plaintiff. These facts may not be sufficient in themselves to overcome the presumption (see In re Estate of Squire, 168 Iowa 597), yet they have probative force, and are entitled to be considered by the jury in determining the ultimate question as to whether or not there was an intention on his part to compensate for the services rendered, and they have some probative force in negativing the thought that the services were rendered with no intention on his part to compensate his daughter therefor."

We have examined all the decisions cited by the defendants upon this question of reciprocal services. Most of them do not support the defendants' contention—at least not to the extent of establishing a universal rule that want of reciprocity in the rendition of physical service conclusively overcomes the presumption of gratuity. There are extreme cases where the

courts have held that the total inability of the recipient of the services to reciprocate, together with other circumstances, will justify the court in rejecting the presumption as a matter of law. Such, for example, is *Henry v. Knight,* 74 Ind. App. 562, 122 N. E. 675, a case of a niece who assumed the burden of supporting an imbecilic and crippled aunt under circumstances "wholly consistent with an intention to exact payment therefor from the one whose obligations she had discharged." A similar case is *Key v. Harris,* 116 Tenn. 161, 92 S. W. 235, 8 Ann. Cas. 200, where the recipient of benefits from her sister was likewise an imbecile and an invalid, who "was never able at any time during her life to perform any portion of the reciprocal duties arising out of the family relation."

We think it to be the natural inference that when Mrs. Ibach entered the home of her daughter and son-in-law to live with them she became a member of the family. While, as her daughter testified, she was unable to assist with the housework, there is nothing to show that she was not capable of, and did not perform, those "acts of kindness and good will" (*Disbrow v. Durand,* supra) which characterize the household relationship. The evidence warranted a finding that the relationship existed. Whether there was a mutual expectation that the services rendered by the defendants would be compensated (see *Estate of McLain,* 126 Or. 456, 462, 270 P. 534) was a question of fact, the defendants having the burden of showing such facts and circumstances as would establish the intention on the one part to charge and the other to pay. 71 C. J., Work and Labor, 74, § 35; *Shern v. Sims* (Mo. App.) 258 S. W. 1029. On that question the evidence as to the money transaction between the parties is relevant; but, if the trier of the

facts found, in accordance with the plaintiff's testimony, that the money was turned over by her to the defendants for safekeeping, the reasonable conclusion could be drawn that this transaction did not justify the expectation on the defendants' part that Mrs. Ibach intended to pay for her board and lodging.

We have put to one side consideration of the fact that one of the defendants, who furnished part of the services, is the daughter of the plaintiff, and that as to her the relationship alone would create a presumption that the services were gratuitous. We need not determine whether the joint services of the husband and wife are indivisible and take their legal color from the relationship of the wife to the plaintiff. It is sufficient to say that on the questions of fact which have been discussed the judgment has foundation in the evidence and cannot be disturbed by this court. The conclusion we have reached is supported in some measure by the following cases in which the presumption of gratuity was applied between parents-in-law and children-in-law living together as members of the same family: In re *Schmidt's Estate*, 93 Wis. 120, 67 N. W. 37; *Heinz v. Jacobi*, 76 N. J. L. 189, 68 A. 1069; *Harris v. Harris*, 106 Mich. 246, 64 N. W. 15; *Cauble v. Ryman, Administrator*, 26 Ind. 207; *Van Sandt v. Cramer*, 60 Ia. 424, 15 N. W. 259; *Ulrich v. Arnold*, 120 Pa. St. 170, 13 A. 831; *Young's Estate (McHenry's Appeal)*, 148 Pa. 575, 24 A. 124; *Callahan v. Wood*, 118 N. C. 752, 24 S. E. 542; *Poole v. Baggett*, 110 Ga. 822, 36 S. E. 86; *Sprague v. Waldo*, 38 Vt. 139.

The defendants cite as authority for their position In re *McKinney's Estate*, supra, and *Sigman v. Herdman*, supra. The great point of difference between the instant case and the McKinney case, in which the claim

was against the estate of a deceased sister, is sufficiently shown by the following quotation from the opinion in the McKinney case (175 Or. 34):

> "While taking care of her sister, Mrs. Tracy was not 'living as a member of the family' of Miss McKinney. She lived in quarters for which she was paying rent and in which she maintained her own home."

In *Sigman v. Herdman,* supra, we held that the evidence was conflicting as to whether or not the claimant, who had rendered services to her deceased brother, was living in his home while such services were performed as a member of his family, or in the capacity of a servant, and it was, therefore, error to non-suit the claim. There is nothing in that decision which requires a holding in this case, as a matter of law, under the evidence, that there was an implied promise on the part of the plaintiff to pay the defendants for her board and lodging.

The defendants' brief calls attention to statements in the McKinney case and Sigman v. Herdman to the effect that no presumption unfavorable to the claim of a relative more remote than that of parent and child will be indulged unless it appears that at the time the services were rendered the claimant was living as a member of the family of the other party. It is argued that since the defendants here were not living as members of Mrs. Ibach's family, but she as a member of theirs, the presumption of a gratuity does not apply. But this contention is based upon a failure to take account of the effect of the language in the context of the cases in which it was used. Each was a case in which the claimant was living in a house belonging to the recipient of the services, and the meaning in-

tended to be conveyed was that unless the claimant was living in the other party's home *as a member of his family,* and not in some other capacity, the presumption of gratuity would not be applied. There are numerous cases in which the presumption has been applied although the home belonged to the person rendering the service. Most of the cases above cited, in which the relation of parent-in-law and child-in-law was involved, were of this kind.

*Johnson v. Tait,* 160 N. Y. Supp. 1000, cited by defendants, supports their position. The case does not recognize the family relation doctrine approved by our decisions, and we cannot, therefore, follow it.

For the foregoing reasons the judgment is affirmed.