Argued February 5, affirmed with instructions May 16,
petition for rehearing denied June 24, 1969

# BUNTING TRACTOR CO., INC., *Appellant, v.*
# ROY L. HOUCK SONS' CORPORA-
# TION, *Respondent.*

454 P2d 651

*Leo Levenson,* Portland, argued the cause for ap-

pellant. With him on the briefs was A. J. Johnson, Portland.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were McColloch, Dezendorf & Spears and Wayne Hilliard, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, DENECKE and LANGTRY, Justices.

DENECKE, J.

The plaintiff, Bunting, rented earth moving equipment to the defendant, Houck, a road construction contractor. Bunting brought this action alleging a breach of the rental contract. Houck counterclaimed alleging that Bunting breached the contract. The trial court sitting without a jury, found against Bunting and awarded Houck $81,000 on its counterclaim. Bunting appeals.

The written rental agreement provided that Bunting would provide sufficient vehicles and operators to Houck so that Houck could move 1,000 cubic yards of earth per hour from a borrow area to certain highway and bridge fills. Houck agreed to load the vehicles, have available a minimum of 1,800,000 cubic yards of material, and pay the plaintiff $0.14 per cubic yard of material hauled a mile.

Bunting contends that Houck breached the contract by: (1) not having a minimum of 1,800,000 cubic yards of material available; (2) delaying the use of Bunting's equipment and not proceeding with the work; (3) moving the place where the material was loaded to a location where the road to and from the fill area was steep and rocky, causing excessive maintenance

costs; and (4) unnecessarily renting other earth moving vehicles and deducting the cost of such rentals from moneys owed plaintiff.

Plaintiff assigns as error the trial court's sustaining objections to certain evidence offered by plaintiff. Plaintiff does not assign as error any of the trial court's conclusions of law or findings of fact.

A major controversy between the parties was whether Houck, after the work had started, changed the borrow area from that shown to Bunting before the agreement was made. The plaintiff's president testified about the location of the borrow and fill areas and drew a sketch of the job location which was admitted into evidence. He testified: "The borrow area or pit was located immediately adjacent to Highway 30's right-of-way, extending west a distance of perhaps 800 feet or so adjacent to the highway and was in this area here. [Apparently, the witness then circled the borrow area on the sketch.] This county road where they went up to inspect this pit came right off Highway 30, practically across the road from the access road or haul road, went down across the track here and then it swung on up and around the canyon here to quite a height up above the borrow area. We—Dick and Roy and Mr. Oliver and I drove up and they were pointing out where this borrow material was, and parked the car on the first slight bench on that county road and looked down into this area. Most of the conversation was in explanation of the whole job and was conducted by Mr. Oliver. He was the Houck engineer. He apparently was best informed of everyone concerned with the whole situation, and he explained this was— * * *." At this point Houck objected upon the ground that the contract recites that Bunting had examined the site of the work and in-

formed himself of conditions. Houck also objected when plaintiff's president was asked: "You were clearly informed as to where these deposits [referring to the borrow area] were that you were to move, is that right?" The trial court sustained the objections to both questions upon the ground that such testimony would violate the parol evidence rule and this is claimed as error.

■ We do not need to decide whether the trial court's rulings upon these objections were correct because the evidence which was objected to was already before the court from this same witness or subsequently was received. The above-quoted testimony illustrates this. In addition, the court examined the witness who testified as follows:

"THE COURT: As the borrow area was then excavated for the purpose of providing this fill material to be carried to the job site, what overall area was encompassed?

"A Well, the material that we looked at—

"THE COURT: No, what was hauled out.

"A All of the area we looked at was hauled out.

"THE COURT: Is that all?

"A No.

"THE COURT: How do you know what they looked at? You were standing on one side of the hole.

"A It wasn't a hole then. It was a deposit. It was a rather pronounced deposit, a big drift of blow sand. They are quite prevalent in that area and are very readily distinguishable.

"THE COURT: What was the size of the hole when you got through?

"A Well, the excavation of the area that we had inspected—

"THE COURT: No, when you left the job how big was the hole that was left?

"A It wasn't a hole. There was a hole where we had inspected, where the blow sand came out of. Then they went out of that area with the loader, up this canyon or draw. * * *"

We conclude that the trial court understood the witness's testimony to be that Houck pointed out to the witness that the borrow area was this location near the highway.

Under these circumstances any error on the part of the trial court could not be prejudicial. *Brice v. Danisch,* 244 Or 505, 508, 419 P2d 18 (1966).

Mr. Bunting was asked: "* * * How long did the loader of the defendant stay in its original position?" The trial court sustained an objection. Here, again, the plaintiff was permitted to introduce substantial other evidence that the loader stayed in its original position about 10 days and thereafter was moved six or seven times by Houck and a couple of months after the job started was five-tenths of a mile from its original position. Any error in sustaining that objection to Mr. Bunting's testimony was not prejudicial.

The other assignment of error by Bunting is well taken. Houck affirmatively alleged in its answer that Bunting had been paid in full except that pursuant to the contract, "defendant retained $6,443.52 which it [Houck] later offered to the plaintiff and which constitutes an offset against the claims of defendant * * *." Bunting filed a reply which was a general denial of all the affirmative allegations in Houck's answer. There was no evidence upon the issue. The

trial court did not allow Bunting the offset against Houck's judgment on its counterclaim.

■ We believe it is reasonable to conclude that Bunting's denial of Houck's admission of retainage owing Bunting was inadvertent and that Houck did retain $6,443.52 should be treated as a fact admitted by the pleadings.

■ Houck requests that if we hold that the retainage should be allowed that we determine the amount of the judgment rather than remand for a new trial. We have such power. Oregon Constitution, Art VII, § 3; *In re McKinney's Estate*, 175 Or 28, 38, 149 P2d 980, 151 P2d 459 (1944).

The judgment against the plaintiff and for the defendant on plaintiff's claims against defendant is affirmed. The trial court is instructed to modify defendant's judgment against plaintiff by deducting from the amount previously awarded the amount of the admitted retainage, $6,443.52. Costs to the appellant.